UNITED STATES of America, Appellee,

v.

Gennaro LANGELLA and Carmine Persico, a/k/a "Junior," Defendants-Appellants.

Nos. 1672, 1673, Dockets 86–1294, 86–1295.

United States Court of Appeals, Second Circuit.

Argued Aug. 15, 1986.

Decided Sept. 8, 1986.

Michael Chertoff, Asst. U.S. Atty., New York City (Rudolph W. Giuliani, U.S. Atty., John F. Savarese and Kenneth Roth, Asst. U.S. Attys., New York City, of counsel) for appellee.

Michael Young, New York City (David Breitbart, New York City, of counsel) for defendant-appellant Langella.

Stanley M. Meyer, Brooklyn, N.Y. (Frank A. Lopez, Brooklyn, N.Y., of counsel) for defendant-appellant Persico.

Before PRATT and MINER, Circuit Judges, RE, Chief Judge, U.S. Court of International Trade.

MINER, Circuit Judge:

The instant indictment was filed in the United States District Court for the Southern District of New York (Owen, J.) and charges appellants Gennaro Langella and Carmine Persico, together with seven others, with conspiring to participate and participating in the affairs of an enterprise known as "the Commission of La Cosa Nostra," in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c), (d) (1982). *United States v. Salerno, et al.*, No. SSS 85 Cr. 139 *("Salerno")*. The indictment charges appellants, in essence, with extortion in relation to concrete-pouring jobs valued at more than $2 million.

Upon conviction in the United States District Court for the Southern District of New York on June 13, 1986, after a jury trial before the Honorable John F. Keenan, in *United States v. Persico, et al.*, No. S 84 Cr. 809 *("Persico")*, appellants moved before Judge Owen to dismiss the *Salerno* indictment on double jeopardy grounds. According to appellants, the double jeopardy clause of the fifth amendment bars their prosecution here, because the *Persico* convictions stemmed from the same illegal scheme in regard to concrete-pouring jobs in New York City. Following oral argument on June 20th and 23rd, Judge Owen denied the motion and Langella and Persico filed their notices of appeal on June 26th.

After hearing argument by counsel on August 15, 1986, we rejected appellants' contentions and affirmed the district court's denial of their motion in a summary order, indicating that this formal opinion would follow.

## I. BACKGROUND

The *Persico* indictment was filed in 1984, charging Persico, Langella and twelve other individuals with conspiring to participate and participating in the affairs of an enterprise known as the "Colombo Organized Crime Family of La Cosa Nostra" ("Colombo Family") through a pattern of racketeering acts, in violation of 18 U.S.C. § 1962(c), (d). The alleged pattern included a Hobbs

Act conspiracy to extort money from certain construction companies, 18 U.S.C. § 1951; extortion of ten named construction companies, 18 U.S.C. §§ 1951–1952; labor bribery, 29 U.S.C. § 186 and 18 U.S.C. § 2 or New York Penal Law § 180.15; embezzlement, 29 U.S.C. § 186 and 18 U.S.C. § 2; official bribery, 18 U.S.C. § 201; loansharking, 18 U.S.C. §§ 891 and 892 or 891 and 894; and gambling, 18 U.S.C. § 1955. In addition, the indictment charged Persico and Langella with substantive counts of extortionate conspiracy and extortion, 18 U.S.C. § 1951; labor bribery, 29 U.S.C. § 186; official bribery, 18 U.S.C. § 201; loansharking, 18 U.S.C. §§ 891 and 892 or 891 and 894; and gambling, 18 U.S.C. § 1955.

After the indictment was filed, the government furnished a bill of particulars further specifying the objectives and victims of the extortionate scheme. The bill of particulars explicitly stated that the conspiracy charged in the indictment was "confined to extorting payoffs in connection with construction jobs in which the portion of the contract price relating to the pouring of concrete did not exceed $2 million." Bill of Particulars, *United States v. Persico*, No. S 84 Cr. 809, ¶ 4. The bill of particulars also alleged that the money extorted by the conspirators "was used or intended to be used by and for the benefit of themselves and other members and associates of the Colombo Family." *Id.* ¶ 5. Moreover, the bill of particulars specified that the extortion payments were not divided among "other New York Families of La Cosa Nostra or among the 'Commission' of La Cosa Nostra." *Id.* ¶ 6.

Thereafter, on June 25, 1985, the government filed the *Salerno* indictment, charging Persico, Langella and seven other defendants with RICO conspiracy and asserting their membership in "the Commission of La Cosa Nostra" ("Commission" or "Club"). *Salerno*, No. SSS 85 Cr. 139. The indictment alleged that the Commission was a council of leaders of various organized crime families, "an enterprise distinct from the individual Families," Salerno Indictment, ¶ 6, established with the special purposes of, inter alia, resolving disputes among families and carrying out "joint ventures" involving more than one family. *Id.* ¶ 8. The alleged racketeering included extortionate conspiracy and substantive extortions, 18 U.S.C. § 1951; labor bribery, 29 U.S.C. § 186 and 18 U.S.C. § 2; loansharking conspiracy, 18 U.S.C. §§ 891 and 892; and murder. The *Salerno* RICO indictment also addressed a different set of racketeers from those named in the *Persico* indictment. Of the fourteen conspirators named in the *Persico* indictment, only three —Persico, Langella and Ralph Scopo—are charged in the *Salerno* indictment.

Before the *Persico* trial began, Persico moved to sever the counts concerning extortion in the construction industry and to have those counts joined with the charges in the *Salerno* case. Judge Keenan denied the motion, finding that the *Persico* indictment alleged that a separate criminal enterprise—the Colombo Family—conducted an extortionate scheme wholly distinct from that charged in *Salerno*. *United States v. Persico*, 621 F.Supp. 842, 855–56 (S.D.N.Y. 1985).

Thereafter, the *Persico* case was brought to trial before Judge Keenan. The evidence adduced at trial showed that between 1981 and 1984, the Colombo Family demanded payoffs of either one or two percent of the contract price from certain contractors performing concrete-pouring jobs of less than $2 million. The government also offered proof that the scope of the Colombo Family's extortionate scheme was limited by the existence of another complementary extortionate scheme that was carried out as a joint venture by the Colombo Family and three other organized crime families in New York City. This joint scheme extorted money from contractors for concrete-pouring jobs in Manhattan in excess of $2 million. The two percent payoff received from these contractors was to be distributed among the four organized crime families that constituted the Club.

The distinction between the two schemes was well illustrated by testimony concern-

ing Technical Concrete Construction Company ("Technical"). Initially, because Technical was involved in concrete jobs valued at less than $2 million, its principals were compelled to make payoffs to the Colombo Family. Eventually, Technical also obtained permission from the four families that jointly controlled the Club scheme to perform jobs valued at more than $2 million. On these jobs, Technical was required to make separate payoffs to each of the four families. Similarly, another concrete contractor, who was a victim of the Colombo Family's extortionate scheme for concrete-pouring jobs under $2 million, was told he would have to seek permission from the three other organized crime families before bidding for jobs of over $2 million.

At the conclusion of the *Persico* trial, on June 13, 1986, the jury returned verdicts convicting Persico and Langella of all racketeering acts and substantive counts arising out of the Colombo Family's extortionate scheme. Langella and Persico then moved to dismiss the *Salerno* indictment on the ground that the double jeopardy clause barred their further prosecution in light of their convictions in *Persico*. Judge Owen denied their motion, finding that the *Salerno* indictment alleged a distinct racketeering enterprise—the Club or Commission—and different racketeering acts—extortion in concrete-pouring jobs involving more than $2 million, while *Persico* had involved only the Colombo Family and concrete-pouring jobs of less than $2 million. For the reasons stated by Judge Owen and set forth below, we affirm the denial of appellants' motion.

## II. DISCUSSION

■ This appeal implicates the strand of fifth amendment jurisprudence concerned with determining whether one criminal offense is the same as a second criminal offense. Langella and Persico contend that the prosecution has artificially delineated between those concrete-pouring jobs involving more than $2 million and those involving less than $2 million for the pur-

pose of charging them with participating in the affairs of two separate RICO enterprises.

Although both indictments charge these two defendants with membership in a criminal enterprise that extorted payments from construction companies involved in concrete-pouring jobs in New York, the two indictments purport to charge two separate enterprises. We are cognizant that "[i]t is Congress, and not the prosecution, which establishes and defines offenses," *Sanabria v. United States*, 437 U.S. 54, 69, 98 S.Ct. 2170, 2181, 57 L.Ed.2d 43 (1978), and that "[f]ew, if any, limitations are imposed by the Double Jeopardy Clause on the legislative power to define offenses." *Id.* As *Sanabria* advises, "once Congress has defined a statutory offense by its prescription of the 'allowable unit of prosecution,' ... that prescription determines the scope of protection afforded by a prior conviction or acquittal." *Id.* at 69–70, 98 S.Ct. at 2181–2182 (citations omitted).

On the question of what Congress prescribed under RICO as the "allowable unit of prosecution," the Supreme Court's opinion in *United States v. Turkette*, 452 U.S. 576, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981), is instructive. There the Court stated:

> In order to secure a conviction under RICO, the Government must prove both the existence of an "enterprise" and the connected "pattern of racketeering activity." The enterprise is an entity, for present purposes a group of persons associated together for a common purpose of engaging in a course of conduct. The pattern of racketeering activity is, on the other hand, a series of criminal acts as defined by the statute.... The former is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit. The latter is proved by evidence of the requisite number of acts of racketeering committed by the participants in the enterprise.

*Id.* at 583, 101 S.Ct. at 2528 (citation omitted). As we since have recognized, for a subsequent indictment to present a double

jeopardy problem, *"both* the enterprise and the pattern of activity alleged in the [earlier] indictment must be the same as those alleged in the [second] indictment. If either is different, there is no infirmity under the double jeopardy clause." *United States v. Russotti,* 717 F.2d 27, 33 (2d Cir.1983), *cert. denied,* 465 U.S. 1022, 104 S.Ct. 1273, 79 L.Ed.2d 678 (1984).

Here, there is no double jeopardy bar, because the *Persico* and *Salerno* indictments plainly allude to different enterprises. The *Persico* indictment concerned the "Colombo Family of La Cosa Nostra," whereas the *Salerno* indictment alleges as the pertinent enterprise the "Commission of La Cosa Nostra." We reject Langella's argument that both indictments charge the enterprise to be La Cosa Nostra. Although the Commission and the Colombo Family, in a sense, are vertically organized segments of an intricate, organized crime structure, the allegations of the two indictments sufficiently demonstrate that they are two separate and independent criminal enterprises. Significantly, the Colombo Family is not merely a lower level of authority within the hierarchy of organized crime: Within its own sphere of operation, the Colombo Family is a self-sufficient enterprise that functions without oversight by the Commission. Consequently, we find that the current prosecution of these defendants in *Salerno* is not barred by the double jeopardy clause, because the two indictments charge the existence of two separate enterprises.

■ In any event, even if we were to assume an identity of the enterprises, we still would be compelled to reject appellants' double jeopardy claims, because the two indictments also allege two distinct patterns of racketeering activity. In *Russotti,* we adopted a five-factor test developed in the Eighth Circuit for determining whether two RICO counts charge two distinct patterns of racketeering activity. *Id.* at 33 (citing *United States v. Dean,* 647 F.2d 779 (8th Cir.1981), *modified in banc on other grounds,* 667 F.2d 729 (8th Cir.),

*cert. denied,* 456 U.S. 1006, 102 S.Ct. 2296, 73 L.Ed.2d 1300 (1982)). Those factors are: (1) the time of the various activities charged as parts of separate patterns; (2) the identity of the persons involved in the activities under each charge; (3) the statutory offenses charged as racketeering activities in each charge; (4) the nature and scope of the activity the government seeks to punish under each charge; and (5) the places where the corrupt activity took place under each charge. *Dean,* 647 F.2d at 788. Under this five-factor test, there is a clear distinction between the patterns of racketeering charged in *Persico* and *Salerno.*

*Nature and Scope of Racketeering Activity* —According to *Russotti,* this is the "most significant factor" in evaluating a double jeopardy claim. 717 F.2d at 34. Here, there is absolutely no overlap of any kind between the patterns of racketeering activity alleged in the two indictments. Extortions involving concrete contracts valued above the $2 million dividing line were assigned to the Commission. Extortions involving contracts of less than that amount were handled by the Colombo Family. We reject Langella and Persico's argument that the $2 million cut-off is an artificial distinction contrived by the prosecution to create two extortionate schemes where only one existed. The members of the Colombo Family and the Commission themselves decided to divide their areas of criminal jurisdiction in this manner and, *in fact,* the criminal activity was so divided. As much as a geographical boundary could be used to divide the criminal jurisdiction of two horizontally competing criminal enterprises, we consider significant the monetary demarcation used here to divide the jurisdictions of the vertically organized enterprises. At the *Persico* trial, it was shown that Scopo, one of the alleged co-conspirators, had explained to a contractor that Colombo Family members had only circumscribed authority to permit the contractor to bid for a concrete-pouring job:

CONTRACTOR: Yeah. Why can't I do the concrete?

SCOPO: You can't do it. Over two million you can't do it. It's under two million, hey, me, I tell you go ahead and do it.

CONTRACTOR: Who do I gotta go see? Tell me who I gotta go see[.]

SCOPO: You gotta see every Family. And they're gonna tell you, "no." So don't even bother.

Thus, the nature and scope of the racketeering acts that the government prosecuted in *Persico* are plainly distinct from the acts that are the subject of the *Salerno* indictment.

*Time Range* —The individual racketeering acts in Persico occurred between 1968 and 1986, with many taking place before 1979. The individual racketeering acts in *Salerno* extend from September 1978 to 1984, with only three occurring before 1980. The time periods, therefore, partially overlap with each other.

*Personnel* —Of the twenty-three persons indicted in *Salerno* and *Persico*, only three —Persico, Langella, and Scopo—are named in both indictments.

*Statutory Offenses* —Only three of the nine statutory offenses charged in the two indictments overlap—Hobbs Act extortion, 18 U.S.C. § 1951; labor bribery, 29 U.S.C. § 186; and loansharking, 19 U.S.C. § 892— and, of these, the loansharking charges in *Salerno* do not even name Langella and Persico. In addition, the *Persico* indictment charged five types of statutory offenses not charged in *Salerno:* embezzlement, official bribery, gambling, possession of stolen property, and narcotics trafficking. Conversely, the *Salerno* indictment charges numerous homicides, a category of crime not charged in *Persico*.

*Geographical Locations* —The activities of the Colombo Family, which were the subject of the *Persico* indictment, were centered in New York, New Jersey, and Florida. The *Salerno* enterprise is nationwide and international in scope.

In sum, although there is some identity of participants, statutory offenses, time, and place, we believe the different nature and delineated scope of each racketeering activity are dispositive on this issue. The two indictments address two highly formalized and rigidly structured enterprises, each clearly demarcated with distinct areas of authority and operation. The convictions of Langella and Persico for their participation in the affairs of the Colombo Family in no manner bars the current prosecution for their alleged participation in the affairs of the Commission.

■ Likewise, we reject appellants' claims that their double jeopardy rights are violated by the counts in the *Salerno* indictment alleging Hobbs Act extortion under 18 U.S.C. § 1951 and labor bribery under 29 U.S.C. § 186. The *Persico* indictment charged Hobbs Act and labor bribery violations by alleging that Persico and Langella conspired to commit extortion and that Langella engaged in substantive extortion and aided and abetted labor bribery in connection with specific construction jobs. The *Salerno* indictment similarly alleges under the Hobbs Act and the labor bribery statute that Persico and Langella participated in an extortionate conspiracy and certain substantive extortions and briberies. Nevertheless, none of the specific extortions or labor briberies of which Langella and Persico were convicted in *Persico* are now the subject of the *Salerno* prosecution. Moreover, the *Salerno* indictment is restricted to those extortions and briberies allegedly carried out at the behest of the Commission. Consequently, no double jeopardy issue is presented.

## III. CONCLUSION

For the above reasons we affirmed, in our order of September 8, 1986, the district court's denial of defendant's motions to dismiss on double jeopardy grounds.