**UNITED STATES of America, Appellee,**

v.

**Joseph CIANCAGLINI, a/k/a Chickie, Appellant.**

**No. 88–1438.**

United States Court of Appeals, Third Circuit.

Argued July 26, 1988.

Decided Oct. 13, 1988.

Nicholas J. Nastasi (argued), Nicholas J. Nastasi, P.C., Philadelphia, Pa., for appellant.

David E. Fritchey, Arnold H. Gordon, Albert J. Wicks, Louis R. Pichini, Philadelphia Strike Force, Philadelphia, Pa., Andrew Levchuk (argued), U.S. Dept. of Justice, Crim. Div., Appellate Staff, Washington, D.C., for appellee.

Before GIBBONS, Chief Judge, and SEITZ and HUTCHINSON, Circuit Judges.

## OPINION OF THE COURT

HUTCHINSON, Circuit Judge.

We are presented in this case with the issue of whether the Double Jeopardy Clause bars the prosecution of appellant Joseph Ciancaglini for RICO substantive and conspiracy charges under 18 U.S.C.A. §§ 1962(c), (d) (West 1984). He was earlier convicted of RICO statutory charges involving the same enterprise. One of the predicate acts underlying the present charges partially overlapped the first indictment in time. Because we find that the indictment in this appeal alleges a different pattern of racketeering activity, we will affirm the district court's denial of Ciancaglini's pretrial motion.

### I.

The first indictment (Testa indictment) was filed on February 19, 1981 in the Eastern District of Pennsylvania.[1] Count I charged a RICO conspiracy violation under 18 U.S.C.A. § 1962(d). It identified Cianca-

glini and 9 other defendants, 13 named coconspirators and others known and unknown as members of an enterprise which engaged in, and the activities of which affected, interstate commerce. The purpose of the enterprise "was to control, manage, finance, supervise, participate in and set policy concerning the making of money through illegal means." Appendix (App.) at 118A. Ciancaglini was "part of the core group" of the enterprise and oversaw many of the enterprise's gambling operations. *Riccobene*, 709 F.2d at 217.

The Testa indictment alleged that the conspiracy began in June of 1972 and continued until June 30, 1978. This indictment alleged that the enterprise engaged in a pattern of racketeering activity of illegal gambling, mail fraud, wire fraud, and collections or extensions of credit by extortion. The defendants were also separately charged with the collection of unlawful debts. No one defendant was charged with committing all eight predicate offenses. Three of the predicate offenses involved the staging of a robbery at a car dealership to defraud its insurer. The others involved several illegal loan and gambling operations. Count I of the Testa indictment also alleged 41 overt acts committed in furtherance of the RICO conspiracy.[2] These activities were conducted primarily in the Philadelphia and southern New Jersey areas.

Counts II and III charged Ciancaglini and several other defendants with illegal gambling under 18 U.S.C.A. § 1955. The jury convicted all defendants under Count I, acquitted Ciancaglini under Count II and convicted Ciancaglini and three others under Count III.

The present indictment (Scarfo indictment) was filed on January 11, 1988 in the Eastern District of Pennsylvania. Count I and II charge RICO substantive and conspiracy violations, 18 U.S.C.A. § 1962(c), (d). They identify Ciancaglini and eighteen other defendants, 15 named conspirators

1. For a more extensive discussion of the facts, see our opinion in *United States v. Riccobene*, 709 F.2d 214 (3d Cir.), *cert. denied*, 464 U.S. 849, 104 S.Ct. 157, 78 L.Ed.2d 145 (1983).

2. Ciancaglini was named in five of the eight predicate offenses and in ten of the 41 overt acts.

and others known and unknown as members of an enterprise known as "La Cosa Nostra, the LCN, the Mafia, the mob, 'this thing of ours,' the Bruno family and the Scarfo family." App. at 31A. Ciancaglini is the only defendant named in both indictments. Four named coconspirators were defendants in the Testa indictment. Two named coconspirators in the Testa indictment are now defendants in the Scarfo indictment.

The Scarfo indictment alleges that the enterprise was run by bosses identified, in order of succession, as Angelo Bruno, Phillip Testa, and codefendant Nicodemo Scarfo. In this indictment Ciancaglini is identified as a "capos," "cap" or "captain" in the enterprise, a leader of a crew of "soldiers," rather than simply a member of the enterprise. The purpose of the enterprise was to "control, manage, finance, supervise, participate in and set policy concerning the making of money through illegal means." App. at 32A.

The indictment alleges a conspiracy which continued from April of 1976 until October of 1987. It charges that the enterprise conducted its affairs through a pattern of racketeering activity which included murder, attempted murder, conspiracy to commit murder, extortion, collection of credit by extortion, conspiracy to distribute and distribution of controlled substances, illegal lotteries and numbers and illegal sports bookmaking. The indictment also charges the defendants with the collection of unlawful debts. These activities were carried out primarily in the Philadelphia and southern New Jersey areas.

The remaining substantive counts charge various defendants with illegal lotteries, distribution of methamphetamine and extortion. Ciancaglini is named under the extortion charges, Counts VI through IX, and one of the distribution of methamphetamine charges, Count X.

## II.

Ciancaglini filed a pretrial motion to dismiss Counts I and II under the Double Jeopardy Clause because of his prior conviction under the Testa indictment. On May 16, 1988 the district court denied Ciancaglini's motion. Applying the five-factor test set out in *United States v. Dean*, 647 F.2d 779 (8th Cir.), *modified en banc on other grounds*, 667 F.2d 729 (1981), *cert. denied*, 456 U.S. 1006, 102 S.Ct. 2296, 73 L.Ed.2d 1300 (1982) (*see infra*), the court found that the two indictments alleged separate RICO violations. Ciancaglini filed a notice of appeal from this order on May 27, 1988. Appellate jurisdiction over this interlocutory appeal was present because a pretrial order denying a motion to dismiss an indictment based on double jeopardy grounds is a collateral order appealable under *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). *Abney v. United States*, 431 U.S. 651, 662, 97 S.Ct. 2034, 2041–42, 52 L.Ed.2d 651 (1977); *United States v. Liotard*, 817 F.2d 1074, 1080 (3d Cir.1987); *United States v. Inmon*, 568 F.2d 326, 329 (3d Cir.1977).[3] Since double jeopardy raises a legal issue of constitutional dimensions, our scope of review is plenary. *United States v. Aguilar*, 849 F.2d 92, 95 (3d Cir.1988).

## III.

The Double Jeopardy Clause provides: "[N]or shall any person be subject for the

---

**3.** On September 26, 1988, while this appeal was pending, the district court found that Ciancaglini's double jeopardy claim was frivolous and directed trial to begin September 28, 1988. Under our decision in *United States v. Leppo*, 634 F.2d 101, 105 (3d Cir.1980), a finding by the district court that the double jeopardy claim is frivolous gives it continuing jurisdiction over the double jeopardy issue. Under *Leppo*, we are not, by that finding, deprived of appellate jurisdiction over the order denying Ciancaglini's motion to dismiss. Our jurisdiction to review the double jeopardy issue had already attached when the district court's order of September 26, 1988 found Ciancaglini's double jeopardy claim frivolous and directed the trial to begin. On September 27, 1988 Ciancaglini filed a motion for a stay of the trial in this court. We denied that motion on September 28, 1988.

The double jeopardy issue is not moot because a dispute remains between the parties as to whether appellant can be *convicted* for this offense. The double jeopardy issue would survive a trial. The issue of appealability is not to be confused with the issue of mootness.

same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V. Double jeopardy attaches when it is "shown that the two offenses charged are in law and in fact the same offense." *United States v. Felton,* 753 F.2d 276, 278 (3d Cir.1985) (citing *United States v. Ewell,* 383 U.S. 116, 124, 86 S.Ct. 773, 778, 15 L.Ed.2d 627 (1966)). Once the defendant has presented a non-frivolous claim of double jeopardy, the government bears the burden of showing that there were two separate crimes. *Felton,* 753 F.2d at 278; *United States v. Inmon,* 568 F.2d 326, 331–32 (3d Cir.1977).

This Court has not yet decided the issue of whether a second RICO substantive or conspiracy prosecution under 18 U.S.C.A. §§ 1962(c), (d) (West 1984), involving the same enterprise as an earlier one, violates the Double Jeopardy Clause. However, we recently determined in *United States v. Liotard,* 817 F.2d 1074, 1078 (3d Cir.1987) that a "totality of the circumstances test" is to be used in evaluating the merits of a conspiracy defendant's double jeopardy claim. In *Liotard* we noted that the "same evidence" test, which considers whether the same evidence would support convictions upon both indictments, has been used in this Court to determine whether " 'two offenses charged are in law and fact the same offense.' " *Id.* at 1077 (quoting *United States v. Young,* 503 F.2d 1072, 1075 (3d Cir.1974)). We reasoned that the same evidence test can be easily met in conspiracy cases, if undue emphasis is placed upon the overt acts alleged, rather than the agreement itself. *Liotard,* 817 F.2d at 1078. Accordingly, we stated, " '[i]t is the agreement which constitutes the crime [of conspiracy], not the overt acts.' " *Id.,* (quoting *Young,* 503 F.2d at 1076 (citations omitted)). In adopting the totality of the circumstances test for successive conspiracy prosecutions, we noted that although we had not until then explicitly adopted a totality test, we had followed a similar approach in two prior appeals involving double jeopardy claims by conspiracy defendants. *Id.; see Felton,* 753 F.2d at 278–81; *Inmon,* 568 F.2d at 328–29. We stated:

Under the totality of circumstances approach followed in *Inmon* and *Felton,* a conspiracy defendant will make out a non-frivolous showing of double jeopardy if he can show that (a) the "locus criminis" of the two alleged conspiracies is the same, (b) there is a significant degree of temporal overlap between the two conspiracies charged, (c) there is an overlap of personnel between the two conspiracies (including unindicted as well as indicted coconspirators), and (d) the overt acts charged and the role played by the defendant according to the two indictments are similar.

*Id.* (citations omitted). Because the two indictments differed only in that one alleged a conspiracy involving acts of an interstate nature and the other alleged a conspiracy involving acts of an intrastate nature, we declined to consider "the statutory offenses charged in the indictments" as one of the factors in the totality of the circumstances test. We reasoned that consideration of the statutory offenses "might lead to irrational results in the cases like the one before us, where different statutes are violated by similar acts." *Id.* at 1078 n. 7.

In *United States v. Dean,* 647 F.2d 779 (8th Cir.1981), *modified en banc on other grounds,* 667 F.2d 729, *cert. denied,* 456 U.S. 1006, 102 S.Ct. 2296, 73 L.Ed.2d 1300 (1982), the United States Court of Appeals for the Eighth Circuit set out factors similar in part to those we considered in *Liotard*'s "totality of the circumstances" test for double jeopardy claims involving subsequent substantive RICO charges. The Eighth Circuit's test had evolved in cases assessing double jeopardy claims in garden variety conspiracies. It found the same factors useful in analyzing RICO double jeopardy claims. All but one of the factors it considered are essentially the same as those considered by this Court in *Liotard.* The exception is the Eighth Circuit's consideration of "the statutory offenses charged as racketeering activities in each charge." *Id.* at 788. Although *Dean* involved only successive substantive RICO charges, the court noted that:

A RICO charge focusses [sic] upon the "pattern" formed by a number of unlawful acts, while a conspiracy charge focusses [sic] upon the agreement formed by persons to do unlawful acts. Thus, a RICO charge, like a conspiracy charge, focusses [sic] upon a relation between various elements of criminal activity rather than a single criminal act. Determination in a given case of the number of patterns or agreements requires examination of the four corners of the charges.

*Id.*

■ The *Dean* test has been applied by the United States Courts of Appeals for the Second and Eleventh Circuits to both RICO substantive and conspiracy cases where the defendant challenges a subsequent prosecution on double jeopardy grounds. *See United States v. Langella*, 804 F.2d 185, 189 (2d Cir.1986); *United States v. Ruggiero*, 754 F.2d 927, 932 (11th Cir.), *cert. denied*, 471 U.S. 1127, 1137, 105 S.Ct. 2661, 86 L.Ed.2d 277 (1985); *United States v. Russotti*, 717 F.2d 27, 33 (2d Cir.1983), *cert. denied*, 465 U.S. 1022, 104 S.Ct. 1273, 79 L.Ed.2d 678 (1984).

18 U.S.C.A. § 1962(c) provides:

It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

Under RICO, "enterprise" and "pattern of racketeering activity" are separate elements of § 1962(c), both of which must be proven by the government. *United States v. Turkette*, 452 U.S. 576, 583, 101 S.Ct. 2524, 2528–29, 69 L.Ed.2d 246 (1981); *United States v. Riccobene*, 709 F.2d 214, 223 (3d Cir.), *cert. denied*, 464 U.S. 849, 104 S.Ct. 157, 78 L.Ed.2d 145 (1983). Therefore, we believe a successive RICO charge must allege both the same enterprise and substantially the same pattern of racketeering activity to give rise to a valid double jeopardy claim. *Russotti*, 717 F.2d at 33. *See also Langella*, 804 F.2d at 189 (because two indictments charged two separate enterprises, no double jeopardy problem); *Ruggiero*, 754 F.2d at 931 ("Because [the pattern of racketeering activity is a] separate element, an individual may be prosecuted for more than one violation of subsection 1962(c) in connection with the same enterprise, so long as each violation involved a different 'pattern of racketeering activity.'"); *Dean*, 647 F.2d at 788 n. 19 (because pattern of racketeering activity is separate element, each distinct pattern of activity will support separate charge under § 1962(c) regardless of identity of enterprise).

■ Appellant argues that *Dean's* progeny err by not considering whether the agreement or scheme in successive RICO *conspiracy* indictments is the same.[4] Appellant contends that while looking to the "pattern of racketeering activity" may be appropriate for determining whether successive substantive RICO charges violate double jeopardy, it does not present an appropriate mode of analysis for successive RICO conspiracy charges because of the danger that the prosecution will arbitrarily divide up the racketeering acts into convenient time segments. *See Liotard*, 817 F.2d at 1078; *Young*, 503 F.2d at 1075. Appellant cites *Liotard* as the appropriate test to apply to successive RICO conspiracy charges.

The RICO conspiracy statute, 18 U.S.C.A. § 1962(d), provides: "It shall be unlawful for any person to conspire to violate any of the provisions of subsections (a), (b), or (c) of this section." All three subsections require the government to prove a "pattern of racketeering activity." Analysis of an agreement to violate RICO requires an inquiry into the elements of each subsection. Therefore, analysis of an agreement to violate § 1962(c) requires an inquiry into both the enterprise and its pattern of racketeering activity. We reject appellant's argument because we do not believe that Congress intended that a de-

4. *Dean* only involved substantive RICO charges.

fendant should be prosecuted only once for an ongoing RICO enterprise when, after being convicted of carrying out the enterprise's activities through one pattern, he allegedly continues to carry them out through a separate pattern.

Because this case involves successive prosecutions of the same substantive and conspiracy RICO offenses, we will apply the "totality of the circumstances test" outlined in *Liotard* to determine whether both indictments charge the same "pattern of racketeering activity." A separate inquiry need not be made for both a substantive RICO charge under 18 U.S.C.A. § 1962(c) and a conspiracy RICO charge under 18 U.S.C.A. § 1962(d), if both are based on the same underlying "pattern of racketeering activity." *Ruggiero*, 754 F.2d at 932 n. 9. Because we believe that the concerns regarding the consideration of the underlying statutory offenses of *Liotard* do not apply in this case, we will consider the pattern of racketeering activities charged in each indictment.

## IV.

■ So considered, the two indictments charge distinct RICO violations under a totality of the circumstances test. The Testa indictment charges a conspiracy which extended from June, 1972 until June 30, 1978. The Scarfo indictment charges a conspiracy which extended from April 1, 1976 to October 1987. This time overlap of approximately 25 months between the two indictments is insignificant because only one of 36 racketeering acts occurred within that period. That racketeering act, the murder of New Jersey Judge Edwin Helfant, occurred on February 15, 1978. Ciancaglini is not charged with participating in Judge Helfant's murder.[5] The Helfant murder was not included in the Testa indictment. There is no evidence that the government could have charged Judge Helfant's murder as a racketeering act in the Testa indictment.

Five of 123 overt acts charged in the Scarfo indictment occurred between April 20, 1976 and February 15, 1978, within the time frame of the Testa indictment. Two of these overt acts involved meetings on April 20, 1976 and November 4, 1977 between Scarfo and other coconspirators regarding the leadership of the enterprise and its control. These two meetings were also included in the Testa indictment. The other three overt acts involved the Judge Helfant murder. Ciancaglini is not named in any of these overt acts, and there was a 35 month hiatus between the acts charged in the two indictments in which Ciancaglini was involved.

Both indictments allege acts which primarily took place in the Philadelphia and southern New Jersey areas. Of 28 total defendants, Ciancaglini is the only person named as a defendant in both indictments. Testa indictment defendants Phillip Testa, Frank Narducci, Sr., Harry Riccobene and Pasquale Spirito are named as unindicted coconspirators in the Scarfo indictment.[6] Scarfo indictment defendants Salvatore Merlino and Nicodemo Scarfo were unindicted coconspirators named in the Testa indictment. The remaining 21 defendants were only named in one of the two indictments. Because of the overlap, however, we are unable to conclude that this was not the same "enterprise." Both indictments involved Philadelphia-based crime families, and both alleged enterprises with the same goal. The government does not contend otherwise. *See* Government's Brief at 34.

Other than the two meetings on April 20, 1976 and November 4, 1977 between Scarfo and various coconspirators and the three acts involved in Judge Helfant's murder, the indictments allege different overt acts. The 41 overt acts alleged in the Testa indictment include events involving extortion, a plan to defraud a car dealership's insurance company, illegal loans, and illegal gambling operations. The 123 overt acts alleged in the Scarfo indictment include events surrounding 10 murders and 4 attempted murders, initiations into La Cos Nostra, illegal numbers operations, illegal sports bookmaking, illegal drug distribution and extortion. There is no overlap in

---

**5.** The first racketeering act Ciancaglini is charged with is the murder of John Calabrese on approximately October 6, 1981.

**6.** All but Harry Riccobene are now deceased.

the overt acts Ciancaglini is alleged to have participated in. In the Testa indictment, Ciancaglini is alleged to have participated in overt acts including defrauding the car dealership's insurance company, collection of illegal loans by threat, and numbers operations. In the Scarfo indictment, Ciancaglini allegedly participated in racketeering acts including three murders, one attempted murder, methamphetamine distribution and a broad-based extortion scheme.

Regarding the role Ciancaglini played in the two indictments, it appears that he was raised to a higher level of leadership in the Scarfo indictment. It alleges that he was a "captain".

There is some similarity between the racketeering acts charged in the Testa indictment and those charged in the Scarfo indictment. The Testa indictment charged that the pattern of racketeering activity included collection of credit by extortion, mail and wire fraud, illegal gambling, lotteries and numbers, illegal craps and the collection of unlawful debts. Of those, Ciancaglini was charged with collection of credit by extortion, mail fraud and illegal gambling. The Scarfo indictment charged that the pattern of racketeering activity included murder, attempted murder, conspiracy to commit murder, extortion, distribution of methamphetamines and illegal gambling. Of those, Ciancaglini was charged with murder, attempted murder, distribution of methamphetamine and extortion. All of these racketeering acts occurred after the Testa indictment was filed, and many occurred after the trial on the Testa indictment in April of 1982.

Considering all of these facts, we believe that the patterns of racketeering activity charged in the two indictments are distinct. Those charged in the Testa indictment focus on illegal gambling and extortion. Those charged in the Scarfo indictment focus on murder and drug distribution. Although there is some overlap similarity and some time overlap in the two indictments, Ciancaglini's dual involvement is minimal. They allege different and distinct patterns of racketeering activity. Under the totality of the circumstances test, as applied to RICO and RICO conspiracy charges, we hold that Ciancaglini has not been subjected twice to jeopardy by including him as a defendant in both the Testa and the Scarfo indictments.

Of course, under our totality of the circumstances test, a more significant overlap of time, or a more substantial identity of overt acts or similarity in predicate acts could dictate a different result. RICO is not an anvil on which the government can break an enterprise's over-all pattern of racketeering into discrete parts in order to obtain more than one chance of conviction. For that reason, it is neither wise nor possible to attempt an exhaustive listing of the factors that may enter into the totality of the circumstances test we today adopt in RICO cases for double jeopardy purposes. Each case is to some extent peculiar unto itself and governed by its own facts. What cannot be permitted is a prosecutorial purpose of tactically bringing successive RICO prosecutions against one enterprise in and around the same location over the same time frame. This record does not show such a purpose.

## V.

For these reasons, we will affirm the district court's order denying Ciancaglini's motion to dismiss Counts I and II of the indictment.