**UNITED STATES of America, Appellee,**

v

**Anthony SALERNO; Paul Castellano; Aniello Dellacroce; Gennaro Langella; Anthony Corallo; Salvatore Santoro; Christopher Furnari, Sr.; Philip Rastelli; Ralph Scopo; Carmine Persico; Stefano Canone; Anthony Indelicato, Defendants,**

**Carmine Persico and Gennaro Langella, Defendants–Appellants.**

**Nos. 195, 246, Dockets 91–1277, 91–1315.**

United States Court of Appeals, Second Circuit.

Argued Oct. 7, 1991.

Decided May 19, 1992.

Linda S. Sheffield, Atlanta, Ga., for defendant-appellant Carmine Persico.

Gerald J. McMahon, New York City, for defendant-appellant Gennaro Langella.

J. Gilmore Childers, Asst. U.S. Atty., S.D.N.Y., New York City (Otto G. Obermaier, U.S. Atty., Helen Gredd, Asst. U.S. Atty., S.D.N.Y. of counsel), for appellee.

Before MINER and MAHONEY, Circuit Judges, and MISHLER,[*] District Judge.

MAHONEY, Circuit Judge:

Defendants-appellants Carmine Persico and Gennaro Langella appeal from an order of the United States District Court for the Southern District of New York, Richard Owen, Judge, entered April 16, 1991 that denied their motion pursuant to 28 U.S.C. § 2255 (1988) to vacate their convictions affirmed in *United States v. Salerno,* 868 F.2d 524 (2d Cir.), *cert. denied,* 491 U.S. 907, 109 S.Ct. 3192, 105 L.Ed.2d 700, 493 U.S. 811, 110 S.Ct. 56, 107 L.Ed.2d 24, 25 (1989) (the "Commission case"). Persico and Langella seek to vacate these convictions as violative of the Double Jeopardy Clause of the Fifth Amendment because of their earlier convictions affirmed in *United States v. Persico,* 832 F.2d 705 (2d Cir. 1987), *cert. denied,* 486 U.S. 1022, 108 S.Ct. 1995, 100 L.Ed.2d 227 (1988) (the *"Persico* case").

Persico and Langella were initially convicted of substantive and conspiracy violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c) and (d) (1988), and related crimes in the *Persico* case. *See Persico,* 832 F.2d at 707–09. They then moved to dismiss the pending indictment in the Commission case, which also accused them of substantive and conspiracy RICO violations and related crimes, *see Salerno,* 868 F.2d at 527–28, on double jeopardy grounds. Their motion was denied, and we affirmed that denial in *United States v. Langella,* 804 F.2d 185 (2d Cir.1986), *cert. denied,* 488 U.S. 982, 109 S.Ct. 532, 102 L.Ed.2d 564 (1988). Persico and Langella were subsequently convicted in the Commission case, and reiterated their double jeopardy claim on direct appeal from that conviction. Following *Langella,* we rejected that challenge. *See Salerno,* 868 F.2d at 538.

On this appeal, Persico and Langella assert that the Supreme Court's subsequent decision in *Grady v. Corbin,* 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990), mandates that their convictions in the Commission case be vacated as violative of the Double Jeopardy Clause. We conclude, however, that: (1) *Grady* establishes a "new rule" which cannot be applied to Persico and Langella retroactively in a collateral challenge to their convictions in the Commission case; and in any event, (2) the application of the *Grady* rule would not call for reversal of their convictions in the Commission case. We accordingly affirm the district court's denial of their application for § 2255 relief.

## Background

The factual background for the convictions giving rise to this appeal has been recounted in numerous prior opinions, *see, e.g., Salerno,* 868 F.2d at 527–29; *Persico,* 832 F.2d at 707–09; *Langella,* 804 F.2d at 186–88, familiarity with which is assumed. We summarize that background here only

---

[*] The Hon. Jacob Mishler, United States District Judge for the Eastern District of New York, sitting by designation.

to the extent necessary to frame the issues presented by this appeal.

## A. *The Two Indictments.*

The *Persico* indictment charged Persico, Langella, and twelve other defendants with participating and conspiring to participate in the affairs of an enterprise "often known as the Colombo Organized Crime Family of La Cosa Nostra" through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c) and (d) (1988). The alleged pattern, insofar as it involved participation by Persico and Langella, consisted of a Hobbs Act conspiracy to extort money from certain New York City construction companies engaged in the concrete-pouring business, in violation of 18 U.S.C. § 1951 (1988) (Persico and Langella); extortion of ten named construction companies in violation of § 1951 (Langella); receipt of illegal payoffs from the same ten construction companies in violation of 29 U.S.C. § 186(b)(1) (1988) (Langella); embezzlement of union funds in violation of 29 U.S.C. § 501(c) (1988) (Langella); various acts of bribery of public officials in violation of 18 U.S.C. § 201(b)(1) & (3) and (c)(1)(A) (1988) (Persico and Langella); loansharking and loansharking conspiracy in violation of 18 U.S.C. §§ 891–892 and 894 (1988) (Langella); and conduct of an illegal gambling business in violation of 18 U.S.C. § 1955 (1988) and N.Y.Penal Law §§ 225.00 to .20 (McKinney 1989) (Langella). These counts also charged Langella with participation and conspiracy to participate in the affairs of the named enterprise through collection of unlawful debt in violation of 18 U.S.C. § 1962(c) and (d) (1988).

In addition, the *Persico* indictment alleged parallel counts of conspiracy to extort and bribery of a public official against both Persico and Langella, and of extortion, receipt of illegal payoffs, loansharking and loansharking conspiracy, and conduct of an illegal gambling business against Langella.

The Commission indictment charged Persico, Langella, and seven other defendants with conspiring to participate and participating in the affairs of an enterprise "often described as the 'Commission' of La Cosa Nostra" through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(c) and (d) (1988). Persico, Langella, and Ralph Scopo were the only defendants named in both indictments.[1] The indictment alleged that the Commission was a council of leaders of various organized crime families, distinct from these families, established to resolve interfamily disputes and "regulat[e] among the several La Cosa Nostra Families regarding the operation, conduct, and control of illegal activities," and to carry out "joint ventures" between families.

The Commission indictment primarily charged crimes relating to an extortionate conspiracy that "controlled the allocation of contracts to pour concrete on construction jobs where concrete costs exceeded two million dollars." The contracts were allocated to a group of construction companies engaged in that activity and known as the "Club." The alleged pattern of racketeering activity, insofar as it involved participation by Persico and Langella, consisted of a Hobbs Act conspiracy to extort money from "Club" members in violation of 18 U.S.C. § 1951 (1988), and fifteen separate extortions and attempted extortions in violation of § 1951.

The indictment further charged Persico and Langella with a parallel count of conspiracy to extort in violation of 18 U.S.C. § 1951 (1988); fifteen parallel counts of extortion and attempted extortion in violation of § 1951; and six corresponding counts of receiving illegal payoffs in violation of 29 U.S.C. § 186(b)(1) (1988).

The government furnished a bill of particulars in the *Persico* case that further specified the objectives and victims of the extortionate scheme. The bill of particulars stated that the conspiracy charged in

---

1. Scopo was severed from the *Persico* trial for medical reasons. He was convicted in the Commission case of RICO conspiracy and substantive RICO violations, conspiracy to extort, twelve counts of extortion or attempted extortion, and six counts of receiving illegal payoffs. *See Salerno,* 868 F.2d at 527.

the *Persico* indictment "was confined to extorting payoffs in connection with construction jobs in which the portion of the contract price relating to the pouring of concrete did not exceed $2 million," and that the extorted proceeds were intended solely "for the benefit of [the indicted defendants] and other members and associates of the Colombo Family." The bill of particulars also stated that the "extortion payments were not divided or intended to be divided among other New York Families of La Cosa Nostra or among the 'Commission' of La Cosa Nostra," and that the jobs involved in the *Persico* extortionate scheme "were not jobs that were allocated pursuant to an arrangement involving certain concrete contractors known as the 'Club.'"

Before the *Persico* trial began, Persico, Langella, and Scopo moved to sever the racketeering act and related count that charged a conspiracy to extort from the *Persico* indictment and join them for trial with the indictment in the Commission case. After reviewing both indictments, the district court denied the motion, ruling that the indictments charged two separate extortionate schemes. *See United States v. Persico*, 621 F.Supp. 842, 855–56 (S.D.N.Y.1985).

B. *Direct Proceedings.*

In the *Persico* trial, the government offered proof of the Commission conspiracy in order to delineate the bounds of the conspiracy charged against the *Persico* defendants and to provide background information for certain taped conversations. *See Langella*, 804 F.2d at 187–88. In the *Persico* summation, the prosecutor emphasized that the only conspiracy charged was the Colombo family's extortionate conspiracy concerning concrete contracts under two million dollars.

On June 13, 1986, the jury in the *Persico* case returned verdicts convicting Persico and Langella of all racketeering acts and substantive counts arising out of the Colombo Family's extortionate scheme. *Id.* at 188. Persico and Langella then moved to dismiss the indictment of them in the Commission case on the ground that the Double

Jeopardy Clause barred their further prosecution in view of their convictions in *Persico*. *Id.* The district court denied the motion, and we affirmed. *Id.* at 188–90.

Persico and Langella contended in *Langella* that there was only one extortionate conspiracy concerning the concrete-pouring business, and that the government used two million dollars as an arbitrary dividing line to separate a single conspiracy and prosecute it as two separate conspiracies. *Id.* at 188. We rejected that view. We noted that whether successive prosecutions violate double jeopardy turns upon the " ' "allowable unit of prosecution" ' " as defined by Congress. *Id.* (quoting *Sanabria v. United States*, 437 U.S. 54, 69–70, 98 S.Ct. 2170, 2181–82, 57 L.Ed.2d 43 (1978) (quoting *United States v. Universal C.I.T. Credit Corp.*, 344 U.S. 218, 221, 73 S.Ct. 227, 229, 97 L.Ed. 260 (1952))). We noted further that in *United States v. Turkette*, 452 U.S. 576, 583, 101 S.Ct. 2524, 2528, 69 L.Ed.2d 246 (1981), the Supreme Court had interpreted the RICO unit of prosecution as the enterprise and the pattern of racketeering. Accordingly, we concluded, "for a subsequent indictment to present a double jeopardy problem, '*both* the enterprise and the pattern of activity alleged in the [earlier] indictment must be the same as those alleged in the [second] indictment. If either is different, there is no infirmity under the double jeopardy clause.'" *Langella*, 804 F.2d at 188–89 (*quoting United States v. Russotti*, 717 F.2d 27, 33 (2d Cir.1983), *cert. denied*, 465 U.S. 1022, 104 S.Ct. 1273, 79 L.Ed.2d 678 (1984) (alterations in *Langella*)).

We then held that the two indictments involved different enterprises (the Colombo family and the Commission) and different patterns of racketeering activity. 804 F.2d at 189. Thus,

although there is some identity of participants, statutory offenses, time, and place, we believe the different nature and delineated scope of each racketeering activity are dispositive on this issue. The two indictments address two highly formalized and rigidly structured enterprises, each clearly demarcated with dis-

tinct areas of authority and operation. The convictions of Langella and Persico for their participation in the affairs of the Colombo Family in no manner bars the current prosecution for their alleged participation in the affairs of the Commission.

*Id.* at 190.

On November 19, 1986, Persico and Langella were convicted on all counts considered by the jury in the Commission case. On October 27, 1987, we affirmed their earlier convictions in the *Persico* case. *Persico*, 832 F.2d at 705, 718. On January 31, 1989, we affirmed their convictions in the Commission case, *Salerno*, 868 F.2d at 524, 543, rejecting their double jeopardy claim for the second time in reliance upon our earlier ruling in *Langella*. *Salerno*, 868 F.2d at 538. Petitioners' convictions in *Persico* became final no later than May 23, 1988, when the Supreme Court denied certiorari to a number of the *Persico* defendants, including Persico, *see* 486 U.S. 1022, 108 S.Ct. 1995, 100 L.Ed.2d 227 (1988), and their Commission convictions became final on October 2, 1989, when the Supreme Court denied their application for certiorari. *See* 493 U.S. 811, 110 S.Ct. 56, 107 L.Ed.2d 24, 25 (1989).

## C. *Habeas Corpus Proceedings.*

On May 29, 1990, the Supreme Court decided *Grady v. Corbin*, 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990), which reinterpreted federal double jeopardy doctrine. *Grady* held that:

[T]he Double Jeopardy Clause bars any subsequent prosecution in which the government, to establish an essential element of an offense charged in that prosecution, will prove conduct that constitutes an offense for which the defendant has already been prosecuted. This is not an "actual evidence" or "same evidence" test. The critical inquiry is what conduct the State will prove, not the evidence the State will use to prove that conduct.

110 S.Ct. at 2093 (footnotes omitted).

Persico and Langella then moved to vacate their convictions in the Commission case pursuant to 28 U.S.C. § 2255 (1988), contending that they were convicted of the "same conduct" in the Commission case as in the *Persico* case. The government argued that because *Grady* announced a "new rule," it should not be applied retroactively to Persico and Langella in a collateral proceeding after their convictions became final. The government further contended that even if *Grady's* "same conduct" test were applied, the convictions of Persico and Langella in the Commission case should not be disturbed.

On April 16, 1991, the district court denied the § 2255 motion, stating that:

[D]efendants' double jeopardy challenges were rejected because the RICO counts in the *Persico* and *Salerno* indictments were found to allege two separate and distinct patterns of racketeering activity. Therefore, whatever other ramifications *Grady* may have on Double Jeopardy analysis of RICO prosecutions, ... it does not change the analysis applicable here.

Persico and Langella appeal that decision.

## Discussion

Persico and Langella contend on appeal that: (1) *Grady* did not announce a new rule, so the *Grady* doctrine must be applied in this collateral proceeding; and (2) such application requires reversal of their convictions in the Commission case.

## A. *The "New Rule" Issue.*

■ "[A] rule of constitutional law established after a petitioner's conviction has become final may not be used to attack the conviction on federal habeas corpus unless the rule falls within one of two narrow exceptions." *Sawyer v. Smith*, 497 U.S. 227, 110 S.Ct. 2822, 2826, 111 L.Ed.2d 193 (1990) (*citing Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) (plurality opinion)); *see also Saffle v. Parks*, 494 U.S. 484, 486, 110 S.Ct. 1257, 1258, 108 L.Ed.2d 415 (1990); *Butler v. McKellar*, 494 U.S. 407, 412–13, 110 S.Ct. 1212, 1216–17, 108 L.Ed.2d 347 (1990); *Penry v. Lynaugh*, 492 U.S. 302, 313, 109 S.Ct. 2934, 2943, 106 L.Ed.2d 256 (1989). This prohibition applies to federal prisoners seeking relief pursuant to § 2255, as well as state prisoners doing so pursuant to 28 U.S.C.

§ 2254 (1988). *Gilberti v. United States,* 917 F.2d 92, 94–95 (2d Cir.1990). A case announces a new rule if "the result ... 'was not *dictated* by precedent existing at the time the defendant's conviction became final.'" *Graham v. Hoke,* 946 F.2d 982, 993 (2d Cir.1991) (quoting *Teague,* 489 U.S. at 301, 109 S.Ct. at 1070) (emphasis in *Teague*), *cert. denied,* ── U.S. ──, 112 S.Ct. 890, 116 L.Ed.2d 793 (1992). Thus, retroactive application of *Grady* in behalf of Persico and Langella is barred if *Grady* announced a new rule and neither of the postulated exceptions (considered *infra*) applies.

The opening paragraph of *Grady* states succinctly the progression in double jeopardy jurisprudence effected by that decision:

We have long held, *see Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932), that the Double Jeopardy Clause of the Fifth Amendment prohibits successive prosecutions for the same criminal act or transaction under two criminal statutes whenever each statute does not "requir[e] proof of a fact which the other does not." In *Illinois v. Vitale,* 447 U.S. 410, 100 S.Ct. 2260, 65 L.Ed.2d 228 (1980), we suggested that even if two successive prosecutions were not barred by the *Blockburger* test, the second prosecution would be barred if the prosecution sought to establish an essential element of the second crime by proving the conduct for which the defendant was convicted in the first prosecution. Today we adopt the suggestion set forth in *Vitale.* We hold that the Double Jeopardy Clause bars a subsequent prosecution if, to establish an essential element of an offense charged in that prosecution, the government will prove conduct that constitutes an offense for which the defendant has already been prosecuted.[2]

 \* \* \* \* \* \*

---

[2] This issue has been raised before us twice in recent years without resolution. *See Fugate v.*

**2.** On April 20, 1992, the Supreme Court vacated and remanded *Calderone, Gambino,* and a case considered *infra, McIntyre v. Trickey,* 938 F.2d 899 (8th Cir.1991), *vacated and remanded sub nom. Caspari v. McIntyre,* ── U.S. ──, 112 S.Ct. 1658, 118 L.Ed.2d 381 (1992), "for further consideration in light of *United States v. Felix,*

*New Mexico,* 470 U.S. 904, 105 S.Ct. 1858, 84 L.Ed.2d 777 (1985) (affirming by an equally divided Court); *Thigpen v. Roberts,* 468 U.S. 27, 104 S.Ct. 2916, 82 L.Ed.2d 23 (1984) (deciding on alternate grounds).

*Grady,* 110 S.Ct. at 2087 (footnote 1 omitted).

Persico and Langella contend that the result in *Grady* was dictated by prior precedent, and thus the *Grady* rule should be applied here. This argument, however, cannot survive an examination of the Court's explicit recital of the genesis of the *Grady* rule, which establishes that *Vitale* "suggested" the *Grady* outcome in 1980, the issue was then raised in *Thigpen* (1984) and *Fugate* (1985) without resolution, and *Grady* finally adopted the previously "suggested" rule in 1990. *Cf. Butler,* 494 U.S. at 415, 110 S.Ct. at 1217 (decision clarifying when police-initiated interrogation must cease announced new rule, even if decision deemed "controlled" or "governed" by prior precedent, because "the outcome ... was susceptible to debate among reasonable minds"). This court has accordingly characterized *Grady* as "announc[ing] a new rule for double jeopardy claims arising in the context of successive prosecutions." *United States v. Calderone,* 917 F.2d 717, 720 (2d Cir.1990), *vacated and remanded,* ── U.S. ──, 112 S.Ct. 1657, 118 L.Ed.2d 381 (1992); *see also United States v. Gambino,* 920 F.2d 1108, 1112 (2d Cir. 1990) (*Grady* "significantly altered the jurisprudential landscape of double jeopardy"), *cert. denied,* ── U.S. ──, 112 S.Ct. 54, 116 L.Ed.2d 31 (1991), *vacated and remanded,* ── U.S. ──, 112 S.Ct. 1657, 118 L.Ed.2d 381 (1992).[2]

It is thus clear that *Grady* established a new rule which can be applied in this case only if it falls within " 'one of two narrow exceptions' " to the general prohibition against the retroactive application of new rules in collateral proceedings. *Sawyer,* 503 U.S. ── [, 112 S.Ct. 1377, 118 L.Ed.2d 25] (1992)." ── U.S. ──, 112 S.Ct. 1657, 118 L.Ed.2d 381 (1992). *Felix* does not undercut our observations in *Calderone* and *Gambino* regarding the relationship of *Grady* to prior Supreme Court precedent.

110 S.Ct. at 2831 (quoting *Saffle*, 494 U.S. at 486, 110 S.Ct. at 1258). As the Court described these exceptions in *Sawyer:*

> The first of [the exceptions] applies to new rules that place an entire category of primary conduct beyond the reach of the criminal law, *Teague, supra,* 489 U.S., at [311], 109 S.Ct., at [1075], or new rules that prohibit imposition of a certain type of punishment for a class of defendants because of their status or offense, *Penry, supra* 492 U.S., at [330], 109 S.Ct. at [2953].... The second *Teague* exception applies to new "watershed rules of criminal procedure" that are necessary to the fundamental fairness of the criminal proceeding. *Saffle, supra,* 494 U.S., at [495], 110 S.Ct., at [1263]; *Teague, supra,* 489 U.S., at [311], 109 S.Ct., at [1075].

*Sawyer,* 110 S.Ct. at 2831.

Persico's reply brief directs us to *McIntyre,* in which the Eighth Circuit concluded that *Grady* falls within the first of these exceptions, stating:

> The protection afforded by the double jeopardy clause operates at an elemental level. The purpose of the clause is not to ensure the fairness of the trial, but to prevent the trial from taking place at all. *See Robinson v. Neil,* 409 U.S. 505, 509, 93 S.Ct. 876, 878, 35 L.Ed.2d 29 (1973). Because it bars an unconstitutional prosecution, a rule concerning double jeopardy is analogous to the rule discussed in *Penry,* which would have barred the imposition of an unconstitutional punishment. *See Penry,* 492 U.S. at 329–30, 109 S.Ct. at 2952–53. It thus follows that the prohibition on double jeopardy is a "categorial guarantee[ ] accorded by the Constitution." *See Butler,* 110 S.Ct. at 1218. We therefore conclude that a rule concerning double jeopardy, such as the *Grady* rule, falls under the first *Teague* exception and must be accorded full retroactive effect.

938 F.2d at 904.

As we have observed, *McIntyre* has been vacated and remanded by the Supreme Court for reconsideration in light of *Felix. See supra* note 2. In any event, we disagree with the Eighth Circuit's analysis of this issue.

*McIntyre* does not conclude that *Grady* "place[s] an entire category of criminal conduct beyond the reach of the criminal law" within the meaning of the *Sawyer* formulation, and it is clear that *Grady* does not do so. *See Saffle,* 494 U.S. at 495, 110 S.Ct. at 1263; *Butler,* 494 U.S. at 415, 110 S.Ct. at 1217. Rather, *McIntyre* analogizes the *Grady* expansion of double jeopardy protection to the *Penry* ruling that:

> [A] new rule placing a certain class of individuals beyond the State's power to punish by death is analogous to a new rule placing certain conduct beyond the State's power to punish at all. In both cases, the Constitution itself deprives the State of the power to impose a certain penalty....

*Penry,* 492 U.S. at 330, 109 S.Ct. at 2952.

It seems to us that *Penry* effects a rather carefully limited expansion of the first "primary conduct" exception, and that *McIntyre* inappropriately puts *Grady* into the *Penry* category. The rule established in *Grady* does not immunize primary conduct from overall, or any specific, criminal punishment. Manifestly, the offenses for which Persico and Langella were convicted remain illegal after *Grady. Grady* would establish, at most, that their admittedly criminal conduct cannot be prosecuted in separate trials. This, we believe, is a procedural matter properly tested under the second, rather than first, exception to the prohibition against retroactive application of new rules.

To reiterate, the second exception applies to new " 'watershed rules of criminal procedure' implicating the fundamental fairness and accuracy of the criminal proceeding." *Saffle,* 494 U.S. at 495, 110 S.Ct. at 1263 (quoting *Teague,* 489 U.S. at 311, 109 S.Ct. at 1075). Such rules are exceedingly rare, for it is "unlikely that many such components of basic due process have yet to emerge." *Teague,* 489 U.S. at 313, 109 S.Ct. at 2943. Thus, "[a] rule that qualifies under this exception must not only improve accuracy, but also ' "alter our understanding of the *bedrock procedural elements*" ' essential to the fairness of a proceeding." *Sawyer,* 110 S.Ct. at 2831 (quoting *Teague,* 489 U.S. at 311, 109 S.Ct. at 2942 (quoting *Mackey v. United States,*

401 U.S. 667, 693, 91 S.Ct. 1160, 28 L.Ed.2d 404 (1971) (Harlan, J., concurring)) (emphasis added in *Teague*)).

In our view, the rule established in *Grady* does not satisfy this standard. Although one of the justifications for the new rule in *Grady* was to guard against "giv[ing] the State an opportunity to rehearse its presentation of proof, thus increasing the risk of an erroneous conviction," *Grady*, 110 S.Ct. at 2091–92, the defendant in a successive prosecution also has an opportunity to preview the government's case and rehearse the defense presentation. In any event, the relatively marginal enhancement of trial accuracy provided by the new *Grady* double jeopardy rule does not suffice to warrant its retroactive application. *Cf. Graham*, 946 F.2d at 994 (rule excluding confession of nontestifying codefendant qualifies for second exception because its admission " 'presents a serious risk that the issue of guilt or innocence may not have been reliably determined' ") (quoting *Roberts v. Russell*, 392 U.S. 293, 295, 88 S.Ct. 1921, 1922, 20 L.Ed.2d 1100 (1968) (per curiam)); *Sanders v. Sullivan*, 900 F.2d 601, 607 (2d Cir.1990) (new rule rejecting conviction based on recanted, perjurious testimony within second exception because "[f]ew rules are more 'central to an accurate determination of innocence or guilt' than the requirement ... that one should not be convicted on false testimony") (quoting *Teague*, 489 U.S. at 313, 109 S.Ct. at 2943).

Even assuming enhanced accuracy, furthermore, *Sanders* (and the predecessor Court decisions that it invokes) requires that in order to qualify under the second exception, a new rule must also alter the general understanding of the bedrock procedural elements essential to the fairness of a proceeding. *Grady* explicitly built upon suggestions and intimations in prior double jeopardy rulings by the Court, and can hardly be described as the sort of fundamental departure that would satisfy this aspect of the *Sanders* rule.

In sum, the double jeopardy rule announced in *Grady* is a new rule that does not fit within either exception to the principle denying retroactive application of such rules on collateral review.

**B. *The Merits.***

Recognizing that the only other circuit that has addressed the issue concluded that *Grady* should be applied retroactively, we deem it appropriate to add that even if the *Grady* rule were applied here, it would not benefit Persico and Langella. On the contrary, our ruling in *Langella* that the *Persico* and Commission cases involved "two highly formalized and rigidly structured enterprises, each clearly demarcated with distinct areas of authority and operation," 804 F.2d at 190, easily survives *Grady* scrutiny.

■ Persico and Langella contend that the conduct for which they were convicted in the Commission trial was largely proven at the *Persico* trial, resulting also in a considerable duplication of evidence at the two trials. This is undoubtedly so, but the *Grady* criterion is whether "the government, to establish an essential element of an offense charged in [the Commission] prosecution, will prove conduct that constitutes an offense for which [Persico and Langella have] already been prosecuted [in the *Persico* case]." *Grady*, 110 S.Ct. at 2093. The introduction of background evidence concerning the Commission offenses in the *Persico* case does not satisfy this standard, because Persico and Langella were not "prosecuted" for the Commission offenses in the *Persico* case, and therefore were legitimately prosecuted for those offenses in the subsequent Commission case.

The Court's recent ruling in *United States v. Felix*, 503 U.S. ——, 112 S.Ct. 1377, 118 L.Ed.2d 25 (1992), reinforces this point strongly. The defendant in *Felix* contended that he could not be prosecuted for certain Oklahoma drug transactions because evidence of those transactions had been introduced as proof of criminal intent in a prior prosecution for Missouri drug transactions. The Court rejected this view, stating:

> [I]t is clear that, no matter how much evidence of the Oklahoma transactions was introduced by the Government to help show Felix' state of mind, he was not *prosecuted* in the Missouri trial for any offense other than the Missouri attempt offense with which he was charged.

*Id.* at ——, 112 S.Ct. at 1382. The Court also noted that "*Grady* ... disclaimed any intention of adopting a 'same evidence' test." *Id.* at ——, 112 S.Ct. at 1378 (citing *Grady*, 110 S.Ct. at 2093 & n. 12).

█ Persico and Langella also contend that the two-million dollar dividing point between the *Persico* and Commission conspiracies represents an artificial division by the prosecution of a seamless single conspiracy. On the contrary, we agree with the *Langella* ruling that the prosecution simply followed a demarcation that Persico, Langella, and their cohorts had indisputably established in the course of conducting their criminal affairs.

### Conclusion

We affirm the order of the district court that denied defendants-appellants' motion pursuant to 28 U.S.C. § 2255 (1988) to vacate their convictions in the Commission case.