**UNITED STATES of America**

v.

**William CUTOLO, Vincent DeMartino, Gabriel Scianna, Michael Spataro, Joseph Russo, Frank Iannaci, and Frank Campanella, Defendants.**

No. CR 93–1230.

United States District Court, E.D. New York.

Aug. 5, 1994.

1144

Zachary W. Carter (Andrew Weissman & James Orenstein, of counsel), U.S. Atty., Brooklyn, NY, LaRossa, Mitchell & Ross (James LaRossa and John Mitchell, of counsel), New York City, for defendant Cutolo.

Santangelo, Santangelo & Cohen (George Santangelo, of counsel), New York City, for defendant DeMartino.

Gerald DiChiara, New York City, for defendant Scianna.

Richard A. Rehbock, New York City, for defendant Spataro.

James T. Moriarty, New York City, for defendant Russo.

Bruce Cutler, New York City, for defendant Iannaci.

Goltzer & Adler (George Goltzer, of counsel), New York City, for defendant Campanella.

## MEMORANDUM AND ORDER

NICKERSON, District Judge:

Defendants William Cutolo, Vincent De-Martino, Gabriel Scianna, Michael Spataro, Joseph Russo, Frank Iannaci, and Frank Campanella have been indicted for conspiracy to murder in order to gain entrance to and maintain and increase their positions in an enterprise engaged in racketeering activity, in violation of 18 U.S.C. § 1959, and for using and carrying firearms in relation to crimes of violence, in violation of 18 U.S.C. § 924. Cutolo is also charged with murder under 18

U.S.C. § 1959. Defendants have made various motions.

## I

The indictment alleges, in substance, the following. The defendants are members and associates of the Colombo Organized Crime Family of La Cosa Nostra, an enterprise affecting interstate commerce and engaged in racketeering activity. By June of 1991 the Colombo Family had split into two warring factions, each headed by a person desiring to become the Boss of the Family. One faction supported Victor Orena, the Acting Boss of the Family, and the other supported Alphonse Persico, son of the Boss of the Family. The defendants are allegedly members of the Orena faction.

The indictment contains five counts. The first two counts charge Cutolo with the murder of and with conspiracy to murder James Angellino in November 1988, for the purpose of gaining entrance to and maintaining and increasing Cutolo's position in the Colombo Family.

The third count says that in June 1991 all the defendants conspired to murder members of the Persico faction in order to gain entrance to and maintain and increase their positions in the Colombo Family.

The fourth and fifth counts charge the defendants with using and carrying firearms during and in relation to the crimes charged in the first three counts.

## II

■ All the defendants move to dismiss Counts One through Three on the ground that 18 U.S.C. § 1959 is unconstitutionally vague on its face and as applied.

Section 1959 provides, in pertinent part: Whoever, ... for the purpose of gaining entrance to or maintaining or increasing position in an enterprise engaged in racketeering activity, murders, ... or conspires to do so, shall be punished [as set forth].

The statute is "void for vagueness" only if it fails to define the criminal offense "with sufficient definiteness that ordinary people can understand what conduct is prohibited

and in a manner that does not encourage arbitrary and discriminatory enforcement." *United States v. Jackson*, 968 F.2d 158, 161 (2d Cir.), *cert. denied,* — U.S. ——, 113 S.Ct. 664, 121 L.Ed.2d 589 (1992).

The court considers whether § 1959 is vague as applied here, but not whether it is vague on its face. "Vagueness challenges to statutes that do not involve First Amendment interests are examined in light of the facts of the case at hand." *Id.* Section 1959 does not impinge on First Amendment interests.

Defendants say that the reference to "an enterprise engaged in racketeering activity" in § 1959 renders the statute unconstitutional because a defendant cannot determine what that language means. Their first argument is that enterprises do not engage in racketeering activities, people do. Second, they say that in any event the statute does not provide sufficient guidance to determine whether an enterprise has in fact engaged in racketeering activity.

A. *Can an enterprise engage in racketeering activity?*

Referring to caselaw under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 *et seq.,* the defendants argue that § 1959's requirement that "an enterprise engage[ ] in racketeering activity" is incomprehensible. They point to rulings of the Second Circuit Court of Appeals holding that it is a misconstruction of the RICO statute to look for an enterprise's racketeering acts instead of an individual's racketeering acts. *United States v. Bonanno Organized Crime Family of La Cosa Nostra,* 879 F.2d 20, 27–30 (2d Cir.1989) (organized crime family not a "person" subject to suit under RICO); *United States v. Persico,* 832 F.2d 705, 714 (2d Cir.1987) ("The focus of section 1962(c) is on the individual patterns of racketeering engaged in by a defendant, rather than the collective activities of the members of the enterprise."), *cert. denied,* 486 U.S. 1022, 108 S.Ct. 1995, 100 L.Ed.2d 227 (1988); *see also United States v. Private Sanitation Indus. Ass'n,* 793 F.Supp. 1114, 1128 (E.D.N.Y.1992).

These decisions are not pertinent. RICO does not reach the collective activities of an enterprise. "Section 1962(c) declares it illegal for a *person*—not for an *enterprise*—to engage in a pattern of racketeering activity," *Private Sanitation*, 793 F.Supp. at 1128 (original emphasis), although the activities of the enterprise in which the person participates must affect commerce.

In contrast Section 1959 is directed toward specified crimes committed by persons on behalf of a RICO racketeering enterprise. *United States v. Concepcion*, 983 F.2d 369, 380–81 (2d Cir.1992), *cert. denied*, —— U.S. ——, 114 S.Ct. 163, 126 L.Ed.2d 124 (1993). But by its terms the section also requires the government to prove not only that the activities engaged in by the enterprise affect interstate commerce, as in RICO, 18 U.S.C. § 1959(b)(2), but that at least some of those activities are "racketeering activity" as defined in § 1961. 18 U.S.C. § 1959(a).

B. *Has the enterprise engaged in racketeering activity?*

The defendants, citing RICO, say that a defendant cannot determine when an enterprise has "engaged in racketeering activity." The argument is that while § 1961(1) of RICO defines "racketeering activity" to include the commission of a long list of crimes, federal and state, § 1959 does not spell out how many crimes must be committed and by whom to satisfy that section's prerequisite that the "enterprise" be "engaged" in such activity.

An enterprise, here a group of individuals associated in fact, can only act through its members, associates, or employees. There should be no difficulty in determining whether predicate crimes committed by such persons were on behalf of the enterprise.

Presumably § 1959 does not apply where such persons committed only a single crime. The word "engaged" implies more than that. But this court need not decide how extensive the criminal activity must be before the enterprise may be said to "engage" in racketeering.

Here the indictment describes the Colombo Family as an organization dedicated primarily, if not exclusively, to extensive criminal activities coming within § 1961's definition of racketeering activity. Paragraph 10 of the indictment alleges:

> The principal purpose of the enterprise was to generate money for its members and associates through various criminal activities, including the operation of illegal gambling businesses, the extortionate extensions and collections of credit, and the generation of income from various businesses through illegal means, including the exploitation of the Colombo Family's corrupt control of union officials....

It would be fatuous to say that defendants had no notice that the alleged activities of the Colombo Family fulfill § 1959's requirement that the enterprise be "engaged in racketeering activity." The pervasiveness of the enterprise's alleged racketeering activities precludes any thought that this requirement is unconstitutionally vague as applied. *See United States v. Giampa*, 1992 WL 249885 (S.D.N.Y. Sept. 23, 1992) (§ 1959 not unconstitutionally vague where the enterprise was the Luchese Organized Crime Family and indictment alleged means and methods of enterprise).

### III

The defendants move to dismiss the first three counts because in the grand jury the government did not corroborate accomplice testimony as to murder or conspiracy to murder.

Section 1959 was originally enacted as 18 U.S.C. § 1952B, a companion to the Interstate and Foreign Travel or Transportation in Aid of Racketeering Enterprises statute. 18 U.S.C. § 1952. Section 1952 makes interstate or foreign travel or commerce with the intent to engage in actions "in violation of the laws of the State in which they are committed or of the United States" subject to federal prosecution.

In construing § 1952 the Second Circuit Court of Appeals has held that courts must look to the underlying state law to determine the elements of and defenses to the crimes charged. *United States v. Kahn*, 472 F.2d 272, 277 (2d Cir.), *cert. denied*, 411 U.S. 982,

93 S.Ct. 2270, 36 L.Ed.2d 958 (1973). From this defendants argue that because Congress originally enacted § 1959 as § 1952B the government must prove here not merely the generic crime of murder but must prove all the elements of murder under New York law, must meet all New York state law defenses, and must corroborate accomplice testimony as would be required in a New York state prosecution. *See* N.Y.Crim.Proc.Law §§ 60.22 and 190.65.

Insofar as defendants say the government must corroborate accomplice testimony the premise of the argument is dubious because none of the cases under § 1952 required the incorporation of state procedural and evidentiary law or held the New York corroboration requirement was substantive.

In any event, the Court of Appeals for the Second Circuit has held that in a RICO prosecution the corroboration requirement is a procedural rule and need not be adhered to. *United States v. Paone*, 782 F.2d 386, 393 (2d Cir.), *cert. denied*, 483 U.S. 1019, 107 S.Ct. 3261, 97 L.Ed.2d 761 (1987). Section 1959 complements RICO and should be liberally construed in the same way. *Concepcion*, 983 F.2d at 381. The slight differences in wording between § 1961 of RICO and § 1959 are not significant.

Although the issue has not heretofore been raised in the Second Circuit Court of Appeals, that court has affirmed judgments of conviction under § 1959 where the District Courts have ruled that corroboration was not required. *See, e.g., United States v. Amuso*, 21 F.3d 1251 (2d Cir.1994). This court adheres to its holding in *United States v. Amuso*, 90 CR 446(S-1).

## IV

■ The defendants seek dismissal of Counts Three and Five of the indictment, the so-called "war counts." Count Three charges that all of the defendants conspired to murder the members of the Persico faction. It reads, in pertinent part,

In or about and between June 1991 and the date of the filing of this indictment, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, ... the defendants ... conspired to murder members of the Persico faction of the Colombo Family....

Count Five charges the defendants "each used and carried firearms during and in relation to" the crime charged in Count Three.

Defendants say these counts are insufficient to charge a crime because they lack the details necessary to put the defendants on notice of the specific conduct charged, to prevent violations of double jeopardy, and to preclude the government from offering different proof at trial than it offered to the grand jury. Because the counts cover such a broad range of times and locations, defendants say they cannot adequately sort out their alibis and prepare a defense.

As noted above, the indictment sets forth the circumstances of the "war" between the Persico and Orena factions. Moreover, the alleged members of the Persico faction have been disclosed in other trials in this district. The government has offered to provide a list of those members to the defense.

The conspiracy charged in Count Three was allegedly widespread, involving numerous participants, envisioning many targets, and lasting for a long time. That breadth alone does not make the indictment too vague. The government is not restricted to charging only crimes occurring over short time periods in specific places. Defendants have adequate notice of the "war" crimes charged in Counts Three and Five to prepare their defense. The government will not succeed in any future case making charges based on the same conduct.

## V

■ The defendants move pursuant to Federal Rule of Criminal Procedure 7(d) to strike as surplusage paragraphs 10 and 11 of the indictment. Defendants say these paragraphs contain a number of vague allegations of uncharged criminal activity that will not be part of the government's proof at trial. The paragraphs, entitled "The Purposes, Methods and Means of the Enterprise," read:

10. The principal purpose of the enterprise was to generate money for its members and associates through various crimi-

nal activities, including the operation of illegal gambling businesses, the extortionate extensions and collections of credit, and the generation of income from various businesses through illegal means, including the exploitation of the Colombo Family's corrupt control of union officials. Among the methods and means by which the members of the enterprise furthered its criminal activities were the threatened and actual use of violence, including murder.

11. The members and associates of the Colombo Family engaged in conduct designed to prevent government detection of their identities, their illegal activities and the proceeds of those activities. That conduct included a commitment to murdering persons, particularly members or associates of the Colombo Family, who were perceived as potential witnesses against members of the enterprise.

Defendants argue that this language does not name particular defendants and does not give the necessary notice of particular acts charged to constitute a valid indictment. Contrary to defendants' contention, the terms of § 1959 require the government to prove at trial that the "enterprise engaged in racketeering activity." Whether or not some of the allegations in paragraphs 10 and 11 would be unnecessary in a RICO case, here proof of the acts alleged is proper.

The defendants request notice pursuant to Federal Rule of Evidence 404(b) of each particular crime alleged in paragraphs 10 and 11 that the government plans to introduce at trial. That rule provides, in pertinent part:

Evidence of other crimes ... may ... be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial ... of the general nature of any such evidence it intends to introduce at trial.

The crimes referred to in paragraphs 10 and 11 are not "other crimes" within the meaning of Rule 404(b). Evidence of these alleged crimes goes to an element of the crime charged.

## VI

The defendants ask the court to direct the government to provide material consistent with *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). They claim that the government routinely says that "impeachment" information need not be disclosed until after a witness testifies. The government says it is well aware of its obligations.

*Brady* is a remedial rule. The court will not order compliance with it absent a showing of repeated violations. The government should disclose material serving to impeach witnesses sufficiently early to prevent interruption of the trial.

## VII

Defendants say any easing of confinement or other beneficial treatment of currently incarcerated witnesses should be disclosed pursuant to *Brady*. As noted, the court will not order compliance with *Brady* prospectively.

## VIII

Defendants seek a witness list because of the long time period covered in the indictment and the extensive grounds for impeachment of various witnesses. They claim a witness list would limit their inquiries and ease their trial preparation.

Absent a particular showing of need, the government generally need not provide a witness list. *United States v. Cannone*, 528 F.2d 296, 302 (2d Cir.1975). Balanced against the defendants' need for the list is the danger of witness tampering or intimidation.

From prior cases the defendants are already aware of most of the government's witnesses. The indictment lists murder of potential witnesses as a means by which the Colombo Family has attempted to conceal its activities. The court will not order the government to provide a witness list.

## IX

The defendants seek an order directing the government to produce, pursuant to the Jencks Act, 18 U.S.C. § 3500, all notes, reports, and memoranda prepared by all agencies that participated in the underlying investigations.

Defendants provide no authority for pretrial production of § 3500 material. The government stated in a letter to defense counsel dated January 18, 1994 that it would provide § 3500 material when the jury is sworn. It also said that it preserves all agents' notes of interviews, whether required to do so or not. The defendants' request is denied.

## X

Defendants move for a bill of particulars, pursuant to Rule 7(f) of the Federal Rules of Criminal Procedure. They claim (1) the indictment is too vague regarding how the Colombo Family was "engaged in racketeering activity," (2) they are entitled to notice of unnamed "others" and "unindicted coconspirators," and (3) they are entitled to detailed information regarding every alleged activity listed in paragraphs 10 and 11 of the indictment and regarding the time, place, and manner of every conspiracy and other action mentioned in the indictment.

The purpose of a bill of particulars is to supplement the indictment to enable defendants to prepare their defense, to avoid unfair surprise at trial, and to permit a claim of double jeopardy. *United States v. GAF Corp.,* 928 F.2d 1253, 1260 (2d Cir.1991); *see also United States v. Gotti,* 784 F.Supp. 1017, 1018 (E.D.N.Y.1992).

In defendants' detention hearings the government made proffers as to the alleged roles of the defendants in the Colombo Family. The government says that there has been detailed testimony regarding the racketeering activity alleged in the indictment in five trials in this district. Defendants have sufficient notice from paragraphs 10 and 11 of the indictment combined with the prior trials as to the alleged racketeering activities of the Colombo Family to make a bill of particulars unnecessary.

Their request for detailed information as to every allegation of the indictment exceeds the scope of a bill of particulars and amounts to a demand that the government "disclose its evidence in advance of trial." *United States v. Gottlieb,* 493 F.2d 987, 994 (2d Cir.1974).

The court declines, in its discretion, to direct the government to provide the names of "others" and unindicted coconspirators in Counts Three and Five of the indictment. Those counts, together with the other information available to defendants, are sufficiently specific to put the defendants on notice of the crimes charged.

Count Two of the indictment charges a conspiracy between only William Cutolo and "others" to murder Vincent James Angellino. To provide Cutolo with clearer notice of the conspiracy charged, the government should provide a bill of particulars listing known coconspirators on that count. *See United States v. Feola,* 651 F.Supp. 1068, 1133 (S.D.N.Y.1987), *aff'd,* 875 F.2d 857 (2d Cir.), *cert. denied,* 493 U.S. 834, 110 S.Ct. 110, 107 L.Ed.2d 72 (1989).

## XI

Defendants seek to suppress tapes of conversations intercepted pursuant to a January 29, 1990 court order, saying that the tapes were not timely sealed.

Under 18 U.S.C. § 2518(8)(a) recordings must be sealed "[i]mmediately upon the expiration of the period of the order." The government sealed the tapes on February 27, 1990. The defendants argue that the last intercepted call was February 23, 1990, that the government waited four days to seal and submitted no explanation for the delay, and that therefore the tapes were not timely sealed. *See United States v. Massino,* 784 F.2d 153, 158 (2d Cir.1986).

While the last intercepted call was on February 23, 1990, the government says now, and said in its February 27, 1990 letter to Judge Leval regarding the sealing of the tapes, that the surveillance pursuant to the January 29, 1990 order continued through February 26, 1990. The tapes were timely

sealed the day after the surveillance ended. *See id.*

## XII

■■ Defendants DeMartino, Spataro, and Scianna move to suppress evidence seized from them on December 16, 1991. According to testimony of Detective Maggiore at a suppression hearing and at trial before Judge Edward Korman in *United States v. DeMartino*, 92 CR 114, the following events occurred on that day.

Maggiore and his partner were following DeMartino. DeMartino backed up illegally on a one-way street, crossing a pedestrian cross-walk. He parked his car directly behind a gray 1977 Cadillac, which Spataro and Scianna were trying to enter with the assistance of a wire clothes hanger. Spataro and Scianna were being surveilled by other officers. The officers arrested and searched the three defendants without a warrant. Although the officers did not know it at the time, the Cadillac belonged to Spataro's wife.

None of the defendants has contradicted these facts.

DeMartino argues that a gun found in his waistband should be suppressed because he did not consent to the search of his person and the police did not have probable cause to arrest him. DeMartino challenged the admissibility of this evidence at a hearing in front of Judge Korman on February 20, 1992. *United States v. DeMartino*, 92 CR 114. His motion was denied, and the evidence was admitted at trial.

"[A] prior decision by another court on a motion to suppress is not ordinarily reconsidered in the absence of substantial new evidence or extraordinary circumstances." *Laaman v. United States*, 973 F.2d 107, 113 (2d Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1368, 122 L.Ed.2d 746 (1993). DeMartino has not pointed to any new evidence or extraordinary circumstances. After reviewing the transcript of the suppression hearing, this court agrees with Judge Korman's decision. The court will not suppress the weapon.

Scianna seeks to suppress a gun found on him during the same incident. Spataro seeks to suppress a gun found in his pocket and ammunition, a two-way radio, ski-masks, and an alleged hit-list found in his wife's car on that day. They argue that the police did not have reasonable cause to arrest them and that the arrests were pretexts to permit unlawful searches.

Scianna pleaded guilty to being a previously convicted felon in possession of a weapon, in violation of 18 U.S.C. § 922(g)(1), on March 16, 1991. Even if there are grounds to suppress the weapon, he has admitted possession. His admission will be received in evidence at the trial. His motion is academic.

In any event, on the information currently before the court it appears that the officers had probable cause to arrest and search Scianna and Spataro because they appeared to be breaking into a car. The fact that the arrests may have been pretextual is irrelevant. *United States v. Scopo*, 19 F.3d 777, 782 (2d Cir.1994). If, within 10 days of the date of this order, Spataro submits an affidavit questioning the facts as laid out above, then the court will hold a hearing regarding whether there was probable cause to arrest and search him.

## XIII

On March 2, 1991 defendants Iannaci and Campanella were in a car together. According to the government FBI agents and New York City Police officers, acting as part of a "Colombo Family Strike Force," stopped Iannaci and Campanella allegedly for committing traffic violations and causing an accident. The agents and officers searched the car and recovered a weapon. The two defendants, through an attorney's affidavit, dispute this account of the events. They claim that they did not commit any traffic violations and move to suppress that weapon on the grounds that the search was illegal. They also say that even if there were probable cause to arrest them the arrest was pretextual.

The pretext argument has been foreclosed by the Second Circuit Court of Appeals. The circumstances as portrayed by the government are, in fact, nearly identical to the facts

of *Scopo, supra* (members of the Colombo Family Strike Force stop and search after traffic infractions). The court will hold a hearing as to the disputed traffic violations to determine whether there was probable cause for the arrests.

## XIV

■ Defendants DeMartino, Scianna, Spataro, and Iannaci claim that forcing them to stand trial on Count Five would violate the protections of the Double Jeopardy clause. That count charges that each of the defendants "used and carried firearms during and in relation to a crime of violence" in violation of 18 U.S.C. § 924(c)(1). DeMartino and Scianna have been convicted of possession of a firearm having previously been convicted of a felony. 18 U.S.C. § 922(g)(1). Spataro and Iannaci were previously convicted of attempted possession of a loaded firearm. N.Y.Penal Law § 265.02(4).

These four defendants say that their prior convictions were for lesser included offenses of the crime charged in Count Five.

Double jeopardy bars additional punishment and prosecution for an offense unless "each offense contains an element not contained in the other." *United States v. Dixon,* — U.S. —, —, 113 S.Ct. 2849, 2856, 125 L.Ed.2d 556 (1993). The present charges against these four defendants require proof that their weapon possession was in connection with a crime of violence, an element not present in their prior convictions. To obtain the prior convictions the prosecution was required to prove that DeMartino and Scianna were convicted felons and that Spataro and Iannaci possessed loaded weapons. Those are not elements of the current charges. This prosecution is thus not barred by double jeopardy.

■ Scianna and DeMartino raise an additional double jeopardy claim. The Second Circuit Court of Appeals has held that prosecution "for conduct that was already incorporated into [a previous] sentence would be a second punishment, Congress did not intend to allow multiple punishments for this type of conduct, and the availability of concurrent sentences does not eliminate this double jeopardy problem." *United States v. McCormick,* 992 F.2d 437, 439 (2d Cir.1993).

When Scianna was sentenced on the gun possession charge by Judge Korman, his Presentence Investigation Report listed as relevant conduct the facts surrounding this prosecution. The Probation Department noted that Judge Korman could upwardly depart from the Sentencing Guideline range based on this conduct. He did not depart, and it does not appear that he considered that information to be an important factor in choosing the high end of the guideline range when he sentenced Scianna.

Because Scianna was not punished for this conduct in the prior case, the multiple punishment aspect of double jeopardy does not apply. His claim that he was "in jeopardy" because Judge Korman could have increased his sentence is incorrect. He was neither prosecuted nor punished for the relevant conduct before.

Likewise, when DeMartino was sentenced Judge Korman similarly refused to upwardly depart based on the allegations in the Presentence Investigation Report relating to this case. Judge Korman selected the high end of the guideline range because of DeMartino's decision to associate with an organized crime family immediately after leaving jail, not because of the specific allegations of the Colombo Family war.

## XV

Cutolo moves to suppress statements he allegedly made while in police custody on August 28, 1993. The government concedes that if Cutolo claims that these statements were in response to interrogation there should be a hearing to determine the circumstances under which they were made. The court will hold such a hearing.

## XVI

Campanella moves to suppress a statement he made to a detective in January of 1992. The government says it does not intend to use that statement at trial. This motion is thus moot.

## XVII

 Iannaci moves pursuant to Rules 8(b) and 14 of the Federal Rules of Criminal Procedure for severance of his trial from that of his codefendants.

Rule 8(b) provides, in pertinent part,

Two or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction or in the same series or acts or transactions.... Such defendants may be charged in one or more counts together or separately and all defendants need not be charged in each count.

Iannaci notes that William Cutolo alone is charged in Counts One, Two and Four, based on acts that took place in November 1988—namely the murder of Vincent Angellino. Counts Three and Five, involving all of the defendants, are based on acts taking place starting in June 1991. Iannaci says the time separating these offenses, combined with the indictment's allegation that the war did not begin until around June of 1991, shows that the so-called war counts are not connected to the Angellino counts.

The government has submitted the testimony of Carmine Sessa in *United States v. Persico*, 92 CR 351(S-9), to support its claim that the counts are connected. It argues that the Angellino murder was an early attempt by Victor Orena to take control of the Colombo Family. It says that the outbreak of the internal war cannot be clearly understood without explaining the circumstances of the Angellino murder.

These allegations show that the defendants actions in each of the counts are related enough to warrant a joint trial. *See United States v. Turoff*, 853 F.2d 1037, 1043 (2d Cir.1988). Furthermore, the bulk of proof regarding the various defendants' roles in the Colombo Family as well as the nature of the Family and its activities will be the same for all counts. *See id.* at 1044 (overlapping facts or issues may warrant joinder).

Rule 14 gives the court discretion to order separate trials for properly joined defendants if necessary to avoid prejudice. Here it is unlikely that the jury will conflate the facts about the Angellino murder with any actions by Iannaci. To the extent that evidence is not admissible against all defendants the court will instruct the jury accordingly.

## XVIII

 Scianna makes a number of additional motions. To the extent they are not identical to the motions made on behalf of all defendants, above, they are addressed below.

Scianna wishes access to any confidential sources the government does not intend to produce at trial. His reliance on *United States v. Saa*, 859 F.2d 1067 (2d Cir.1988), *cert. denied*, 489 U.S. 1089, 109 S.Ct. 1555, 103 L.Ed.2d 858 (1989), is misplaced. As that case makes clear, the defendant must make a showing that disclosure of the confidential source is relevant to the defense and that the source can provide testimony "significant in determining guilt or innocence" before the informant's privilege will give way. *Id.* at 1073 (citing *United States v. Russotti*, 746 F.2d 945, 950 (2d Cir.1984), and *Roviaro v. United States*, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957)). Scianna has made no such showing.

Scianna seeks notice of the government's intent to introduce evidence of prior misconduct pursuant to Rule 404(b). There is no reason to believe the government will not comply with the provisions of that rule. Scianna also seeks an order instructing the government not to refer to extraneous crimes of his or any defense witness. In the alternative, he seeks a hearing *in limine* reviewing all such possible misconduct. This motion is overbroad and will be denied.

Scianna also seeks an exhibit list, allegedly pursuant to Rule 16 of the Federal Rules of Criminal Procedure. He cites no specific authority for such a request. This motion is denied.

## XIX

Defendants' motions are denied except to the extent indicated above.

So Ordered.