**UNITED STATES of America,**

**v.**

**Victor M. ORENA, also known as "Vic, Jr.," Thomas Petrizzo, John T. Orena, Vincent Cascio also known as "Schwartzie," Joseph Audino, also known as "Chubby," Paul Bevacqua, also known as "Paulie Guns," Frank Polite and Rocco Miraglia, Jr., Defendants.**

**No. CR 93–1366.**

United States District Court, E.D. New York.

Jan. 31, 1995.

Alan Futerfas, New York City, for defendant Victor Orena.

James LaRossa, LaRossa, Mitchell & Ross, New York City, for defendant Thomas Petrizzo.

Gerald Shargel, New York City, for defendant John Orena.

James Neville, New York City, for defendant Vincent Cascio.

Steve Zissou, Kaye & Zissou, Flushing, NY, for defendant Joseph Audino.

Bettina Schein, New York City, for defendant Paul Bevacqua.

Raymond Perini, Perini & Hoerger, Hauppauge, NY, for defendant Frank Polite.

James DiPietro, Brooklyn, NY, for defendant Rocco Miraglia.

## MEMORANDUM AND ORDER

NICKERSON, District Judge:

The defendants, alleged to be aligned with the Orena faction of the Colombo Organized Crime Family (the Colombo Family), have been indicted (1) for conspiracy to murder members of the Persico faction of the Colombo Family in violation of 18 U.S.C. § 1959(a)(5), and (2) for using and carrying firearms during and in relation to the crime of violence charged in the first count, in violation of 18 U.S.C. § 924(c)(1).

The defendants have made various motions, some of which this judge, by order dated January 20, 1995, referred to Judge Edward R. Korman. The motions now before this judge are for the following relief.

1. To dismiss the indictment on the ground of double jeopardy (made by Victor M. Orena and John T. Orena).

2. To dismiss Count Two of the indictment on the ground of double jeopardy (made by Paul Bevacqua).

3. To dismiss Count One on the ground that 18 U.S.C. § 1959 is unconstitutionally vague (made by Thomas Petrizzo).

4. To require the government to plead and prove (a) every element of every state offense underlying the offense charged under 18 U.S.C. § 1959, (b) all defenses and the corroboration of any accomplice testimony (made by Thomas Petrizzo).

5. To dismiss the indictment for failure to provide defendants sufficient specifics to put them on notice (made by Thomas Petrizzo).

6. To strike paragraphs Ten and Eleven of the indictment as containing prejudicial surplusage (made by Thomas Petrizzo).

7. To require the government to provide material required by *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), a witness list, and information as to the beneficial treatment of witnesses (made by Thomas Petrizzo).

8. To require the government to preserve the originals of handwritten notes of law enforcement interviews with witnesses (made by Thomas Petrizzo).

9. To require the government to file a bill of particulars (made by Thomas Petrizzo).

10. To dismiss Count Two on the ground that there will not be sufficient evidence to support it or in the alternative to inspect the grand jury minutes (made by Frank Polite).

11. To require the government to play certain tapes without giving the jury transcripts (made by Frank Polite).

12. To suppress a beeper seized from Frank Polite.

13. To suppress evidence found on the person of Rocco Miraglia and in his auto.

14. To suppress statements made by Vincent Cascio.

15. To suppress evidence seized from Paul Bevacqua and from his auto.

16. To strike the alias of Paul Bevacqua from the indictment.

Various defendants incorporate in their papers to the extent applicable the motions of their co-defendants.

I.

In an introduction to all counts the indictment recites, in substance, the following. The members of the Colombo Family constituted an enterprise as that term is defined in 18 U.S.C. §§ 1961(4) and 1959(b)(2), that is, a group of individuals associated in fact. The Colombo Family is organized in a hierarchical structure and is part of a nationwide criminal organization known as the Mafia or La Cosa Nostra. Carmine Persico had been boss of the Colombo family for more than ten years but in 1986–1987 was sentenced to a lengthy term of imprisonment. In May 1988 he selected Victor J. Orena, who had been a captain for one year, as acting boss.

Defendant Victor M. Orena, the son of Victor J. Orena, and defendant Thomas Petrizzo are captains in the Family, and the other defendants are soldiers, except defendant Miraglia who is an associate.

The principal purpose of the enterprise was to generate money for its members and associates through various criminal activities, including the operation of illegal gambling businesses, loansharking, the generation of income from businesses through illegal means, including the exploitation of the Family's corrupt control of union officials. Among the means and methods by which the members furthered its criminal activities were threats and actual use of violence including murder.

The members and associates of the family engaged in conduct designed to prevent government detection of their identities and their illegal activity. That conduct included a commitment to murdering persons, particularly members and associates of the Colombo Family who were perceived as potential witnesses against the Family.

In the months prior to June 1991 various Colombo Family members and associates became disenchanted with Victor J. Orena as boss. He announced his intention to become the official boss. But Persico wished that position to be filled by his son, Alphonse

Persico, then scheduled to be released from prison in 1993. In June 1991 a split between the Persico and Orena factions escalated into an internal war for control of the Colombo Family. Each faction formed armed hit teams to monitor the movements of the other faction and to assassinate its members and associates.

In April 1992 Orena was apprehended and in May 1993 was sentenced to a lengthy term of imprisonment. The Orena faction, led by a committee, continued at war with the Persico faction.

The seven defendants in this case were aligned with the Orena faction and were active participants in the war.

The first count says, in substance, that between June 1991 and the date of the filing of the indictment for the purpose of gaining entrance to and maintaining and increasing their positions in the Family, these defendants and others knowingly and intentionally and in violation of 18 U.S.C. § 1959(a)(5) conspired to murder members of the Persico faction in violation of New York Penal Law §§ 125.25 and 105.15.

Count Two charges that, in violation of 18 U.S.C. § 924(c)(1), the defendants together with others used and carried firearms during and in relation to a crime of violence, namely, the crime charged in Count One.

## II.

■ Victor M. Orena and John T. Orena move to dismiss the indictment as violative of their rights under the Double Jeopardy clause of the Fifth Amendment to the United States Constitution. That clause provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." This protection applies both to successive punishments and to successive prosecutions "for the same criminal offense." *United States v. Dixon*, —— U.S. ——, ——, 113 S.Ct. 2849, 2855, 125 L.Ed.2d 556 (1993).

In 1993 the Orenas pleaded guilty to five counts for conspiring to make extortionate extension of credit, in violation of 18 U.S.C. §. 892, conspiring to use extortionate means to collect and collect extensions of credit, in violation of 18 U.S.C. § 894, making extor-

tionate extensions of credit, in violation of 18 U.S.C. § 892, and conspiring to defraud the United States in violation of 18 U.S.C. § 371. In March 1994 Judge Weinstein sentenced both Orenas, and on motion of the government dismissed a count in the indictment alleging a RICO violation under 18 U.S.C. § 1962(b), charging that the Orenas being employed by or associated with the Colombo Family conspired to conduct and participate in the conduct of the affairs of the Colombo Family through the collection of unlawful debts. The introduction to all counts in the indictment made allegations in large part identical to those made in the present case.

The Orenas contend that the present prosecution is for conspiracy that is part of the "one overall conspiracy" that was charged in the earlier indictment.

The "enterprise," that is, the Colombo Family is the same enterprise referred to in both indictments. But the nature of the conspiracy is not the same.

In both prosecutions the government would have to prove the existence of the enterprise. The fact that the enterprise is the same in both prosecutions, even though the methods and means by which members of the enterprise furthered its criminal activity included the threat and actual use of violence including murder, does not make the conspiracy in the later indictment the same as that in the earlier.

■ For the subsequent indictment to present a double jeopardy problem both the enterprise and the activity alleged in the earlier indictment must be the same as the enterprise and the activity alleged in the later indictment. If either is different there is no double jeopardy. *See United States v. Langella*, 804 F.2d 185, 188–89 (2d Cir.1986), *cert. denied*, 488 U.S. 982, 109 S.Ct. 532, 102 L.Ed.2d 564 (1988), *United States v. Russotti*, 717 F.2d 27, 33 (2d Cir.1983), *cert. denied.*, 465 U.S. 1022, 104 S.Ct. 1273, 79 L.Ed.2d 678 (1984), *United States v. Salerno*, 964 F.2d 172, 175 (2d Cir.1992).

■ Since the indictment for conspiring to engage in loan sharking charged quite different activity from the indictment in this case

charging conspiracy to murder members of the Persico faction, there is no double jeopardy.

### III.

Defendant Bevacqua invokes the double jeopardy clause and moves to dismiss Count Two of the indictment, charging him with using and carrying a firearm during and in relation to the crime of violence charged in Count One of the indictment in violation of 18 U.S.C. § 924(c).

He was previously convicted of a violation of 18 U.S.C. § 922(g)(1) making it unlawful for any person who has been convicted of a crime punishable by imprisonment for a term exceeding one year to possess in or affecting commerce any firearm.

■ In *United States v. Dixon, supra,* the Supreme Court in analyzing a double jeopardy claim revived the so-called "same elements" test established in *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932). The same elements test inquires whether each offense contains an element not contained in the other. If not, they are the "same offense" and double jeopardy bars additional punishment and successive prosecution.

The offense for which Bevacqua was convicted and the offense for which he is presently indicted both contain an element not contained in the other. An element of the earlier charge of violation of 18 U.S.C. § 922(g)(1) was a prior conviction for a felony. The government need not establish that prior conviction of a felony in order to convict Bevacqua of the present charge alleged in Count Two.

The government must prove here two elements that it was not required to prove in the previous case, namely, that he not only possessed a firearm but (1) "used" or "carried" it and (2) did so in connection with a crime of violence. 18 U.S.C. § 924(c)(1).

■ Each of the offenses requires proof of an element not required to prove the other offense. There is thus no violation of the double jeopardy clause. *See also United*

*States v. Cutolo,* 861 F.Supp. 1142, 1151 (E.D.N.Y.1994).

### IV.

In a memorandum and order dated August 5, 1994 in *United States v. Cutolo,* 861 F.Supp. 1142 (E.D.N.Y.1994), this court rejected the following contentions.

1. Title 18 U.S.C. § 1959 is unconstitutionally vague;

2. The government must plead and prove all defenses and the corroboration of any accomplice testimony;

3. The indictment fails to provide defendants sufficient specifics to put them on notice;

4. Paragraphs ten and eleven of the indictment contain prejudicial surplusage;

5. The government should file a bill of particulars, should be directed to provide all material consistent with *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), should disclose beneficial treatment of incarcerated witnesses, and should provide a witness list.

The court adheres to its rulings in *United States v. Cutolo.*

### V.

■ The motion to require the government to preserve the originals of handwritten notes of law enforcement interviews with witnesses is unnecessary because the government represents that it preserves such notes. Where notes are of a statement of a witness actually made or affirmatively adopted or approved by the witness, substantially verbatim, they need not be produced provided that they are later incorporated into a typed report that is disclosed to the defense.

### VI.

1. The court will hold suppression hearings with respect to Cascio's statements to agents and with respect to evidence seized from the persons and cars of Bevacqua and Miraglia.

2. Since the government represents it will not offer in evidence the beeper seized

from the home of Polite, there is no need for a hearing on this matter.

3. Polite's motion to dismiss the indictment for failure of proof or to inspect the grand jury minutes is denied. He has not made the requisite strong showing of particularized need. *United States v. Sells Engineering, Inc.*, 463 U.S. 418, 443, 103 S.Ct. 3133, 3148, 77 L.Ed.2d 743 (1983).

4. Polite's motion to require that transcripts of a recorded conversation concerning a gun not be distributed to the jury is denied as without merit.

5. Bevacqua's motion to strike from the indictment his alleged alias "Paulie Guns" is granted.

### VII.

The motions by defendants are denied except to the extent indicated. So ordered.